UNITED STATES DISTRICT COURT
SOUTHERN DISTRCT OF NEW YORK
--------------------------------------------------------------------------------x
MICHELE HERNANDEZ

                               Plaintiff,

              -against-

THE CITY OF NEW YORK; JAMES P. O'NEILL, as
Police Commissioner, Police Department City of New York; WILLIAM
J. BRATTON, as Former Police Commissioner, Police Department
City of New York; RAYMOND W. KELLY, as Former Police
Commissioner, Police Department City of New York; KEVIN
CATALINA, as Former Commanding Officer, 44 Precinct; KEITH
WALTON, as Former Commanding Officer, 49 Precinct and
VANESSA L. GIBSON, as New York City Council Member and
Chairperson of the Committee on Public Safety; DARCEL D.
CLARK, as District Attorney of Bronx County; WANDA PEREZ-
MALDONADO, as Chief, Public Integrity Bureau, Office of the
Bronx District Attorney; OMER WICZYK, as Deputy Chief,
Public Integrity Bureau, Office of the Bronx District Attorney;
KATHERINE J. HWANG, as Special Assistant District Attorney.
Department of Investigations and the Public Integrity Bureau,
Office of the Bronx District Attorney, each being sued individually
and in their official capacities as employees of defendant THE CITY
OF NEW YORK

                           Defendants'
--------------------------------------------------------------------------------x

Amended Complaint

Jury Trial Demand

16 cv 9662

        The plaintiff MICHELE HERNANDEZ by her attorney The Sanders Firm, P.C., for her

complaint against defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; WILLIAM J.

BRATTON; RAYMOND W. KELLY; KEVIN CATALINA; KEITH WALTON; VANESSA L.

GIBSON; DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK; and

KATHERINE J. HWANG respectfully set forth and allege that:

## INTRODUCTION

    1.      This is an action filed on behalf of plaintiff MICHELE HERNANDEZ seeking relief from

defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; WILLIAM J. BRATTON; RAYMOND W. KELLY; KEVIN CATALINA; KEITH WALTON; VANESSA L. GIBSON; DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK; and KATHERINE J. HWANG.

2.      Plaintiff is a 15-year veteran police officer with an exemplary record subjected to a campaign of unlawful retaliation, harassment, threats of 'false indictment and arrest' for exercising her First Amendment right to expose public corruption involving employees of the NYPD, Office of the Bronx District Attorney and New York City Council.

3.      Plaintiff alleges defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; WILLIAM J. BRATTON; RAYMOND W. KELLY; KEVIN CATALINA and KEITH WALTON under threat of suspension and other employment actions forced her and other similarly situated officers to uphold illegal quota systems guised as 'performance goals' to artificially drive arrest, summons and other enforcement activities to the detriment of citizens of color.

4.      Plaintiff alleges these illegal "performance goals" although consistently denied by defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; WILLIAM J. BRATTON; RAYMOND W. KELLY; KEVIN CATALINA and KEITH WALTON and their agents' is a highly developed system designed to generate revenue and pecuniary gains to the detriment of citizens of color.

5.      Plaintiff alleges since March 2003, defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; WILLIAM J. BRATTON; RAYMOND W. KELLY; KEVIN CATALINA; and KEITH WALTON and their agents within the 44th and 49th Precincts, have developed and implemented a system of illegal "performance goals" mandating increasing numbers of arrests, summonses and stop-and-frisks to the detriment of citizens of color.

6.      Plaintiff alleges defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; WILLIAM J. BRATTON; RAYMOND W. KELLY; KEVIN CATALINA and KEITH WALTON and their agents within the 44th and 49th Precincts, developed a detailed monitoring system including computer databases used to track, analyze and categorize police officers to ensure their compliance with the illegal "performance goals."

7.      Plaintiff alleges police officers within the 44th and 49th Precincts, were constantly pressured to meet the illegal "performance goals" and those who failed to meet the "quotas" were subjected to punishment including undesirable assignments, the loss of overtime, denial of leave, separation from partners, poor evaluations, etc.

8.      Plaintiff alleges concerned about the impact of illegal "performance goals" within the 44th and 49th Precincts upon the civil rights of citizens of color, on several occasions complained to defendants' KEVIN CATALINA and KEITH WALTON and other supervisors within the NYPD.

9.      Plaintiff alleges in response, defendants' KEVIN CATALINA and KEITH WALTON threatened her with suspension, transfer and other undesirable employment actions.

10.     Plaintiff alleges defendants' KEVIN CATALINA and KEITH WALTON have also threatened other police officers, especially police officers of color.

11.     Plaintiff alleges these illegal "performance goals" within the 44th and 49th Precincts, have pitted police officers against each other, straining professional relationships and diverting resources away from important law enforcement activities.

12.     Plaintiff alleges the use of these illegal "performance goals" within the 44th and 49th Precincts are a microcosm of a larger public safety crisis regarding NYPD law enforcement activities.

13.     Plaintiff alleges for many several years, the NYPD besieged with complaints about its illegal use of "performance goals" leading to innocent citizens of color being stopped, frisked, issued legally baseless summonses, and even falsely arrested.

14.     Plaintiff alleges through personal tape recordings, officer and citizen complaints, admissions, and newspaper reports, these illegal "performance goals" have been uncovered across the city.

15.     Plaintiff alleges despite the aforementioned, these illegal "performance goals" continue throughout the NYPD to the detriment of innocent citizens of color.

## JURISDICTION AND VENUE

16.     The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1965, 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by:

    a.     the Civil Rights Act of 1871, 42 U.S.C. § 1983, providing for the protection
           of all persons in his civil rights and the redress of deprivation of rights under
           color of law;

    b.     New York State Executive Law § 296; and

    c.     New York City Administrative§ 8-107.

17.     The unlawful employment practices, violations of plaintiff's civil rights complained of herein were committed within the Southern District of New York.

## PROCEDURAL REQUIREMENTS

18.     Plaintiff has filed suit with this Court within the applicable statute of limitations period.

19.     Plaintiff is not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1871.

## PLAINTIFF

20.    Plaintiff MICHELE HERNANDEZ is a female citizen, over twenty-one (21) years of age and employee of defendant THE CITY OF NEW YORK more specifically the Police Department City of New York (hereinafter referred to as the "NYPD").

## DEFENDANTS'

21.    Defendant THE CITY OF NEW YORK is a municipal corporation and at all relevant times plaintiff's employer, with its central offices in the county of New York, and diverse other offices and facilities throughout the world.

22.    Defendant JAMES P. O'NEILL, as Police Commissioner, Police Department City of New York.

23.    Defendant WILLIAM J. BRATTON, as Former Police Commissioner, Police Department City of New York.

24.    Defendant RAYMOND W. KELLY, as Former Police Commissioner, Police Department City of New York.

25.    Defendant KEVIN CATALINA, as Former Commanding Officer, 44 Precinct.

26.    Defendant KEITH WALTON, as Former Commanding Officer, 49 Precinct.

27.    Defendant VANESSA L. GIBSON, as New York City Council Member and Chairperson of the Committee on Public Safety.

28.    Defendant DARCEL D. CLARK, as District Attorney of Bronx County.

29.    Defendant WANDA PEREZ-MALDONADO, as Chief, Public Integrity Bureau, Office of the Bronx District Attorney.

30.    Defendant OMER WICZYK, as Deputy Chief, Public Integrity Bureau, Office of the Bronx District Attorney.

31.     Defendant KATHERINE J. HWANG, as Special Assistant District Attorney, Department of Investigations and the Public Integrity Bureau, Office of the Bronx District Attorney

## BACKGROUND

32.     Plaintiff self identifies as a Puerto-Rican a female employee of the NYPD.

33.     Plaintiff alleges according to NYPD data, since 2002, more than five (5) million citizens were stop, questioned and frisked.

34.     Plaintiff alleges the overwhelming majority, close to ninety (90) percent of the citizens forcibly stopped were released having committed no chargeable felony or misdemeanor offense under the New York State Penal Law.

35.     Plaintiff alleges the overwhelming majority stopped were citizens of color.

36.     Plaintiff alleges other than some anecdotal studies and analysis performed by the New York Daily News and other media companies, there have never been any comprehensive longitudinal studies regarding whether the NYPD policing and enforcement practices have a detrimental effect upon citizens of color.

37.     Plaintiff alleges in May 2010, *The Village Voice* published a series of articles focusing on the illegal "quota system" implemented within the 81st Precinct.

38.     Plaintiff alleges in August 2010, Former Governor David Paterson signed amended legislation broadening the scope of New York State Labor Law § 215-a, enacted to protect against retaliation for not meeting illegal "quotas" for summonses, arrests, and stop-and-frisk activities.

39.     Plaintiff alleges prior to the amendment, New York State Labor Law § 215-a, only covered traffic violations.

40.    Plaintiff alleges in November 2010, the NYPD through its Legal Bureau issued guidance to employees of the NYPD, which in essence "flaunts" the broad reach and protections of New York State Labor Law § 215-a, by claiming supervisors can set "performance goals."

41.    Plaintiff alleges "performance goals" are just illegal "quotas" cloaked in different language.

42.    Plaintiff alleges defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; WILLIAM J. BRATTON; RAYMOND W. KELLY; KEVIN CATALINA and KEITH WALTON and their agents continue to enforce illegal "performance goals" to this day despite its detrimental impact upon citizens of color.

43.    Plaintiff alleges in August 2011 a federal judge in the Southern District of New York, in Floyd v. City of New York 959 F. Supp 540, denied the NYPD's motion for summary judgment in a class-action challenge to the stop-and-frisk program, and described the recordings from the 81st Precinct as "smoking gun" evidence of the existence of illegal "quotas."

44.    Plaintiff alleges despite the public controversy about the NYPD illegal "performance goals" defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; WILLIAM J. BRATTON; RAYMOND W. KELLY; KEVIN CATALINA and KEITH WALTON refuse to admit illegal "performance goals" exist continuing to implement them throughout every precinct, transit district and police service area across the city.

45.    Plaintiff alleges as a result, police officers face intense pressure to comply with these illegal "performance goals."

46.    Plaintiff alleges that until she challenged the illegal "performance goals" implemented within 44th Precinct, she consistently received positive annual reviews.

47.    Plaintiff alleges from March 2003 through present while assigned to various NYPD precincts within the Bronx County, she and other similarly situated police officers are being forced to follow the ticket and arrest quota systems aka "performance goals" in violation of their constitutional rights.

48.    Plaintiff alleges these "performance goals" are implemented to illegally tax constituents, raising revenues, advancing the political agendas of government officials who are rewarded with overtime compensatory time, promotions, committee appointments and other job benefits for enforcing the ticket and arrest quota system.

49.    Plaintiff alleges the ticket and quota systems aka "performance goals" disparately affects African-Americans, Latinos and other persons of color who travel through, work and reside in Bronx County.

50.    Plaintiff alleges since March 2003, the enforcement of the ticket and arrest quotas were particularly egregious under the administration of defendant KEVIN CATALINA, the former Commanding Officer of the 44th Precinct.

51.    Plaintiff alleges sometime in 2008, an anonymous tip claimed former police officer Jose R. Ramos, 40th Precinct became involved with drug activities.

52.    Plaintiff alleges during the wiretap investigation, defendants' THE CITY OF NEW YORK and RAYMOND W. KELLY claimed they 'learned' hundreds of police officers were fixing traffic tickets for financial and/or pecuniary gain.

53.    Plaintiff alleges police officers fixing tickets for financial and/or pecuniary gain was nothing new.

54.    Plaintiff alleges sometime in 2011, former Bronx District Attorney Robert Johnson secured indictments against 17 police officers, subsequently arrested for ticket fixing and related offenses.

55.    Plaintiff alleges the investigation yielded more than 800 instances of ticket fixing.

56.    Plaintiff alleges defendants' THE CITY OF NEW YORK and RAYMOND W. KELLY in collusion with former Bronx District Attorney Robert Johnson artificially contained the ticket fixing scandal by declining to prosecute hundreds of police officers.

57.    Plaintiff alleges defendants' THE CITY OF NEW YORK and RAYMOND W. KELLY in collusion with former Bronx District Attorney Robert Johnson sent the aforementioned cases to the NYPD for administrative handling using the Department Advocate's Office and Deputy Commissioner Trials.

58.    Plaintiff alleges despite the so-called high profile 'Ticket-Fixing' Scandal allegedly 'investigated' by the NYPD Internal Affairs Bureau and the Office of the Bronx District Attorney, the practice of 'fixing' tickets continues to this date.

59.    Plaintiff alleges police officers, sergeants, and lieutenants are 'unfairly' subjected to arrest, suspensions and terminations meanwhile executive management (Captains and above) were largely absolved.

60.    Plaintiff alleges in late December 2013, she requested a transfer from the 44th Precinct because defendant KEVIN CATALINA subjected her to unfair assignments and disciplined 'passively' rejecting the ticket and arrest quota systems.

61.    Plaintiff alleges on or about December 31, 2013, defendant RAYMOND W. KELLY retired from the NYPD.

62.     Plaintiff alleges on March 11, 2014, she initiated a car stop of defendant VANESSA L. GIBSON in Bronx County who she observed talking on her cellular telephone without a hands-free device.

63.     Plaintiff alleges while stopped defendant VANESSA L. GIBSON called defendant KEVIN CATALINA.

64.     Plaintiff alleges she received numerous contacts via Department Radio to "10-1" (Call the command).

65.     Plaintiff alleges when she called the 44th Precinct and spoke with Desk Officer Lieutenant Eason, who implored her not to write the summons.

66.     Plaintiff alleges after disconnecting the cellular telephone call and begrudgingly approaching defendant VANESSA L. GIBSON's vehicle, she asked if the 'C.O.' meaning defendant KEVIN CATALINA was on the cellular telephone.

67.     Plaintiff alleges defendant VANESSA L. GIBSON responded 'yes' and handed her the cellular telephone.

68.     Plaintiff alleges defendant KEVIN CATALINA, motivated by his own personal financial and pecuniary gain interest to be receive a promotion, begged her "Please don't write the summons because she meets with the Mayor and Police Commissioner monthly in her role with the Public Safety Committee".

69.     Plaintiff alleges defendant KEVIN CATALINA wanted to ensure nothing interfered with his career prospects as the Public Safety Committee chaired by defendant VANESSA L. GIBSON controls many aspects of NYPD operations including its budget.

70.     Plaintiff alleges defendant VANESSA L. GIBSON drove away and the partially filled summons not issued.

71.     Plaintiff alleges later that day, defendant KEVIN CATALINA met with her inside of the 44th Precinct and directed her to meet with the Training Sergeant to 'VOID' the summons.

72.     Plaintiff alleges NYPD Patrol Guide Procedure No.: 209-18, the only circumstances when a summons may be 'VOIDED' if prepared in error.

73.     Plaintiff alleges in accordance with the aforementioned procedure, the uniformed member of the service must bring all parts to the command; the commanding officer investigates the circumstances, completes the Summons Voidance Form (PD160-153) and forwards the documents to Chief of Department, Investigation Review Section.

74.     Plaintiff alleges that the next day she met with Training Sergeant DeBenedetto who already had a prior conversation with defendant KEVIN CATALINA.

75.     Plaintiff alleges Sergeant DeBenedetto reviewed the summons for completeness and noticed she wrote in the description, improper use of cellular phone but no section of the law.

76.     Plaintiff alleges Sergeant DeBenedetto in accordance with the instructions of defendant KEVIN CATALINA ensuring the summons would be a voidable mistake and not raise suspicion, directed her to enter section 1229-(c) 3 of the New York State Vehicle and Traffic Law, which is no seat belt driver.

77.     Plaintiff alleges upon information and belief, in furtherance of protecting defendant KEVIN CATALINA, Sergeant DeBenedetto directed her to prepare the Summons Voidance Form (PD160-153) along with the corresponding documents.

78.     Plaintiff alleges that was the last time she was in possession of Summons No.: AAW9075382.

79.     Plaintiff alleges defendant KEVIN CATALINA orchestrated the aforementioned actions to protect himself and defendant VANESSA L. GIBSON from any future criminal charges, departmental or conflict of interest charges if she exposed the truth about the nature of the transaction.

80.     Plaintiff alleges unbeknownst to defendants' VANESSA L. GIBSON and KEVIN CATALINA she kept a copy of the summons because she knew it was wrong but she had nowhere to file a complaint against these 'powerful people.'

81.     Plaintiff alleges see DID NOT report defendant's VANESSA L. GIBSON and KEVIN CATALINA'S actions to the Internal Affairs Bureau as required under NYPD Patrol Guide Procedure No.: 205-38, 207-21 and 207-22 or the New York City Conflict of Interest Board out of fear of retaliation.

82.     Plaintiff alleges upon information and belief, Lieutenant Eason DID NOT report defendant's VANESSA L. GIBSON and KEVIN CATALINA'S actions to the Internal Affairs Bureau as required under NYPD Patrol Guide Procedure No.: 207-21 and 207-22 or the New York City Conflict of Interest Board to protect her out of fear of retaliation.

83.     Plaintiff alleges upon information and belief, Sergeant DeBenedetto DID NOT report defendant's VANESSA L. GIBSON and KEVIN CATALINA'S actions to the Internal Affairs Bureau as required under NYPD Patrol Guide Procedure No.: 207-21 and 207-22 or the New York City Conflict of Interest Board to protect her out of fear of retaliation.

84.     Plaintiff alleges that several months later, she transferred to the 49th Precinct.

85.     Plaintiff alleges upon information and belief, defendant KEVIN CATALINA made his friend and colleague defendant KEITH WALTON aware of the transaction-involving defendant VANESSA L. GIBSON.

86.    Plaintiff alleges she as warned by other supervisors and police officers that no one wants to work with her.

87.    Plaintiff alleges prior to her transfer Lieutenant Wilson, 44th Precinct accused her of being a 'rat.'

88.    Plaintiff alleges 49th Precinct personnel also engage in ticket and arrest quotas along with 'fixing.'

89.    Plaintiff alleges from December 2014 through August 11, 2016, defendant KEITH WALTON a friend and colleague of defendant KEVIN CATALINA and defendant VANESSA L. GIBSON ensured his supervisors gave her unfair assignments and unfair discipline for 'passively' rejecting the ticket and arrest quota systems.

90.    Plaintiff alleges from December 2014 through August 11, 2016, upon information and belief, on several occasions, members of the police department intentionally damaged her personal vehicle while legally parked on property maintained by the NYPD.

91.    Plaintiff alleges in or around March 2016, she observed Sergeant Lillian Montenegro's husband committing several traffic infractions while operating a tow truck.

92.    Plaintiff alleges she observed Sergeant Montenegro's husband driving on the sidewalk while talking on a cellular telephone.

93.    Plaintiff alleges she did not issue him universal summonses for fear of further retaliation.

94.    Plaintiff alleges on or about July 26, 2016, as a favor to defendants' VANESSA L. GIBSON and KEVIN CATALINA, defendant KEITH WALTON 'falsely' accused her of misconduct inside of Chase bank.

95.     Plaintiff alleges to embarrass and intimidate her, defendant KEITH WALTON in a threatening 'male dominating' manner ordered her to remove her gun belt and pass it to him. He then placed it on the floor in his office.

96.     Plaintiff alleges as a favor to defendants' VANESSA L. GIBSON and KEVIN CATALINA, defendant KEITH WALTON 'falsely' accused her of being 'unstable' and feels, she may use her firearm against him.

97.     Plaintiff alleges defendant THE CITY OF NEW YORK is fully aware of defendant KEITH WALTON'S documented history of violence towards women.

98.     Plaintiff alleges as a favor to defendants' VANESSA L. GIBSON and KEVIN CATALINA, defendant KEITH WALTON directed the Assistant Integrity Control Officer along with PBA Delegate Kevin Olmeda to interview female employees of Chase Bank but the female bank manager denied the request.

99.     Plaintiff alleges the female bank manager told them, she was professional and nothing happened.

100.    Plaintiff alleges upon defendant KEITH WALTON receiving the aforementioned information, he began cursing and slamming his hands on the desk, visibly annoyed he could not suspend her for his friends defendants' VANESSA L. GIBSON and KEVIN CATALINA.

101.    Plaintiff alleges undeterred, as a favor to defendants' VANESSA L. GIBSON and KEVIN CATALINA, defendant KEITH WALTON then 'falsely' reported to the Internal Affairs Bureau that she engaged in misconduct.

102.    Plaintiff alleges defendant KEITH WALTON then returned her gun belt.

103.    Plaintiff alleges on or about August 11, 2016, she filed a Notice of Claim with the New York City Comptroller's Office alleging allegations of her civil rights.

104.    Plaintiff alleges on or about August 12, 2016, defendant THE CITY OF NEW YORK transferred her to the Legal Bureau.

105.    Plaintiff alleges on or about August 15, 2016, consistent with her First Amendment rights, she reported her legal claims and public corruption involving employees of the NYPD, Office of the Bronx District Attorney and New York City Council to the readers and stakeholders of the New York Daily News.

106.    Plaintiff alleges on or about August 15, 2016, defendant THE CITY OF NEW YORK transferred her to Bronx Narcotics.

107.    Plaintiff alleges on or about August 15, 2016, defendant THE CITY OF NEW YORK transferred her to the Firearm Suppression Section.

108.    Plaintiff alleges on or about August 15, 2016, defendant THE CITY OF NEW YORK refused to levy criminal, ethical and conflict of interest charges against defendant VANESSA L. GIBSON despite evidence to support them.

109.    Plaintiff alleges on or about August 15, 2016, defendant THE CITY OF NEW YORK refused to levy criminal, internal and conflict of interest charges against defendant KEVIN CATALINA despite evidence to support them.

110.    Plaintiff alleges on or about September 16, 2016, defendant WILLIAM J. BRATTON retired from the NYPD.

111.    Plaintiff alleges on or about September 16, 2016, defendant JAMES P. O'NEILL assumed the position of police commissioner.

112.    Plaintiff alleges prior to the appointment, between November 3, 2014 and September 16, 2016, defendant JAMES P. O'NEILL was the chief of department, the highest-ranking uniform member of the NYPD.

113.    Plaintiff alleges on or about September 20, 2016, defendant THE CITY OF NEW YORK sent her to Performance Monitoring although she had no performance problems.

114.    Plaintiff alleges shortly thereafter, she reported for an interview session at the Internal Affairs Bureau regarding defendant KEITH WALTON'S false accusations.

115.    Plaintiff alleges the investigators engaged in adversarial conduct in direct conflict of NYPD Procedure No.: 206-13.

116.    Plaintiff alleges during the interview, she accused defendant KEITH WALTON of misconduct.

117.    Plaintiff alleges upon information and belief, the investigators failed to report the misconduct to the Internal Affairs Bureau as required under NYPD Patrol Guide Procedure No.: 207-21 and 207-22 or the New York City Conflict of Interest Board.

118.    Plaintiff alleges during the interview, she accused defendants' VANESSA L. GIBSON and KEVIN CATALINA of criminal conduct related to ticket fixing and was vigorously cut-off, saying paraphrase, "we are not going to get into that."

119.    Plaintiff alleges upon information and belief, the investigators failed to report the criminal conduct to the Internal Affairs Bureau as required under NYPD Patrol Guide Procedure No.: 207-21 and 207-22 or the New York City Conflict of Interest Board.

120.    Plaintiff alleges on or about October 14, 2016, defendant THE CITY OF NEW YORK transferred her to Detective Borough Bronx.

121.    Plaintiff alleges on or about November 8, 2016, defendant THE CITY OF NEW YORK transferred her back to the 49th Precinct.

122.    Plaintiff alleges on or about November 15, 2016, as a favor to defendants' VANESSA L. GIBSON and KEVIN CATALINA, defendant KEITH WALTON assigned her to work the late tour because he did not want to see her face.

123.    Plaintiff alleges on or about November 18, 2016, defendant KEITH WALTON was arrested accused of sexually abusing a female officer in his office.

124.    Plaintiff alleges on or about November 19, 2016, defendant THE CITY OF NEW YORK transferred her back to Detective Borough Bronx.

125.    Plaintiff alleges on or about December 14, 2016, she filed this federal lawsuit alleging defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; WILLIAM J. BRATTON; RAYMOND W. KELLY; KEVIN CATALINA; KEITH WALTON and VANESSA L. GIBSON and their agents' have violated her civil rights under the First Amendment of the United States Constitution, the Civil Rights Act of 1871, New York State Executive Law § 296 and New York City Administrative Code § 8-107.

126.    Plaintiff alleges during the pendency of her federal lawsuit, as a favor to her friend defendant VANESSA L. GIBSON, Chairperson of the Public Safety Committee, who have jurisdiction and budget control over the Office of the Bronx District Attorney, defendant DARCEL D. CLARK opened a criminal inquiry against plaintiff using subordinates, defendants' WANDA PEREZ-MALDONADO; OMER WICZYK and KATHERINE J. HWANG.

127.    Plaintiff alleges the 'criminal inquiry' involves her interaction with defendant VANESSA L. GIBSON and surrounding circumstances of the summons VOID.

128.    Plaintiff alleges defendants' DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK and KATHERINE J. HWANG knows this 'criminal inquiry' is retaliatory, legally and ethically wrong, not in the 'public interest' but proceeded anyway.

129.    Plaintiff alleges defendants' WANDA PEREZ-MALDONADO; OMER WICZYK and KATHERINE J. HWANG is fully aware she had private counsel and made such serious allegations of public corruption involving employees of the NYPD, Office of the Bronx District Attorney and New York City Council in her federal lawsuit but chose to usurp her chosen legal counsel.

130.    Plaintiff alleges in or around Late March 2017, unbeknownst to her chosen private counsel, defendant DARCEL D. CLARK using subordinates, defendants' WANDA PEREZ-MALDONADO; OMER WICZYK and KATHERINE J. HWANG contacted PBA Counsel and notified them, she is the subject of a criminal investigation.

131.    Plaintiff alleges the information WAS NOT communicated to her or her chosen private counsel.

132.    Plaintiff alleges shortly thereafter, she notified defendant DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK; and KATHERINE J. HWANG that she's represented by private counsel for all matters related to her allegations of public corruption.

133.    Plaintiff alleges that initially, defendants' DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK and KATHERINE J. HWANG ignored her chosen private counsel.

134.    Plaintiff alleges on or about April 3, 2017, defendants' DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK and KATHERINE J. HWANG contacted the NYPD who ORDERED her to appear for the Grand Jury.

135.    Plaintiff alleges she WAS NOT informed why her appearance was necessary.

136.    Plaintiff alleges through counsel, she contacted defendants' DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK and KATHERINE J. HWANG who refused to disclose information to her chosen private counsel.

137.    Plaintiff alleges on or about April 12, 2017, defendants' DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK and KATHERINE J. HWANG contacted the NYPD who ORDERED her to appear for the Grand Jury.

138.    Plaintiff alleges she WAS NOT informed why her appearance was necessary.

139.    Plaintiff alleges through counsel, she contacted defendants' DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK and KATHERINE J. HWANG who refused to disclose information to her chosen private counsel.

140.    Plaintiff alleges on or about April 13, 2017, defendants' DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK and KATHERINE J. HWANG contacted the NYPD who ORDERED her to appear for the Grand Jury.

141.    Plaintiff alleges she WAS NOT informed why her appearance was necessary.

142.    Plaintiff alleges through counsel, she contacted defendants' DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK and KATHERINE J. HWANG who refused to disclose information to her chosen private counsel.

143.    Plaintiff alleges on or about April 25, 2017, defendants' DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK; and KATHERINE J. HWANG contacted the NYPD who ORDERED her to appear for the Grand Jury.

144.    Plaintiff alleges she WAS NOT informed why her appearance was necessary.

145.    Plaintiff alleges through counsel, she contacted defendants' DARCEL D. CLARK;
WANDA PEREZ-MALDONADO; OMER WICZYK and KATHERINE J. HWANG who refused
to disclose information to her chosen private counsel.

146.    Plaintiff alleges on or about April 25, 2017, she appeared with counsel at the Office
of the Bronx District Attorney 198 East 161st Street, Room 633, and met with defendants' OMER
WICZYK and KATHERINE J. HWANG.

147.    Plaintiff alleges the interview was very 'testy,' through counsel she objected on the
grounds defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; WILLIAM J.
BRATTON; RAYMOND W. KELLY; KEVIN CATALINA; KEITH WALTON; VANESSA L.
GIBSON; DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK; and
KATHERINE J. HWANG are retaliating against for reporting public corruption.

148.    Plaintiff alleges she only appeared because she was ORDERED and failure to
appear would've led to her suspension.

149.    Plaintiff alleges defendants' OMER WICZYK and KATHERINE J. HWANG
admitted their 'inquiry' relates to the allegations she filed in her federal lawsuit.

150.    Plaintiff alleges defendants' OMER WICZYK and KATHERINE J. HWANG tried
to explain away their illegal and unethical attempt to usurp her chosen private counsel and violate
her civil rights saying this is criminal matter and he represents you on the civil matter.

151.    Plaintiff alleges defendants' OMER WICZYK and KATHERINE J. HWANG then
lied to her, saying she was not ORDERED to be there, but the interview was voluntary as a
'witness.'

152.     Plaintiff alleges defendants' OMER WICZYK and KATHERINE J. HWANG lied

to her, because if she was only a 'witness' they never tried to contact her chosen private counsel

to interview her.

153.     Plaintiff alleges she reluctantly submitted to the very 'testy' interview with

defendants' OMER WICZYK and KATHERINE J. HWANG fearing further retaliation,

suspension, false indictment and arrest.

154.     Plaintiff alleges she reluctantly described the interaction with defendant

VANESSA L. GIBSON and circumstances surrounding the summons VOID as indicated in the

federal lawsuit.

155.     Plaintiff alleges at one point, defendants' OMER WICZYK and KATHERINE J.

HWANG left the room, while in the reception area, there was a retired member of the NYPD

seated there waiting for her to finish.

156.     Plaintiff alleges defendants' OMER WICZYK and KATHERINE J. HWANG

said "Her (plaintiff's) interview was rehearsed, not truthful and she already 'admitted' doing it."

157.     Plaintiff alleges about two (2) hours later, the 'testy' interview ended with

defendants' OMER WICZYK and KATHERINE J. HWANG.

158.     Plaintiff alleges she has no intention of further cooperating with defendants' THE

CITY OF NEW YORK; JAMES P. O'NEILL; WILLIAM J. BRATTON; RAYMOND W.

KELLY; KEVIN CATALINA; KEITH WALTON; VANESSA L. GIBSON; DARCEL D.

CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK; and KATHERINE J. HWANG

unless under further threat of retaliation, suspension, false indictment and arrest.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT I
### FREEDOM OF SPEECH
### IN VIOLATION OF
### THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

159.    Plaintiff re-alleges Paragraphs 1 through 158 and incorporates them by reference as Paragraphs 1 through 158 of Count I of this Amended Complaint.

160.    Plaintiff alleges she engaged in constitutionally protected speech and expression.

161.    Plaintiff alleges she suffered retaliatory actions by defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; WILLIAM J. BRATTON; RAYMOND W. KELLY; KEVIN CATALINA; KEITH WALTON; VANESSA L. GIBSON; DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK; and KATHERINE J. HWANG and their agents.

162.    Plaintiff alleges the protected speech was a "motivating factor" in the retaliatory actions.

163.    Plaintiff alleges defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; WILLIAM J. BRATTON; RAYMOND W. KELLY; KEVIN CATALINA; KEITH WALTON; VANESSA L. GIBSON; DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK; and KATHERINE J. HWANG and their agents' actions caused her emotional distress, damage to her personal and professional reputation.

### COUNT II
### GENDER DISCRIMINATION
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

164.    Plaintiff re-alleges Paragraphs 1 through 163 and incorporates them by reference as Paragraphs 1 through 163 of Count II of this Amended Complaint.

165.    Plaintiff alleges that defendant KEITH WALTON acted in an outrageous and

systematic pattern of discrimination, oppression, bad faith and cover-up, directed at her and continuing from in or December 2014 until November 18, 2016.

166.    Plaintiff alleges defendant KEITH WALTON caused her to incur significant legal costs, emotional distress, and damage to her personal and professional reputation.

## COUNT III
## RETALIATION
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

167.    Plaintiff re-alleges Paragraphs 1 through 166 and incorporates them by reference as Paragraphs 1 through 166 of Count III of this Amended Complaint.

168.    Plaintiff alleges that defendant KEITH WALTON acted in an outrageous and systematic pattern of discrimination, retaliation, oppression, bad faith and cover-up, directed at her and continuing from in or around December 2014 until November 18, 2016.

169.    Plaintiff alleges defendant KEITH WALTON caused her to incur significant legal costs, emotional distress, and damage to her personal and professional reputation.

## COUNT IV
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

170.    Plaintiff re-alleges Paragraphs 1 through 169 and incorporates them by reference as Paragraphs 1 through 169 of Count IV of this Amended Complaint.

171.    Plaintiff alleges that defendant KEITH WALTON acted in an outrageous and systematic pattern of discrimination, hostility, oppression, bad faith and cover-up, directed at her and continuing from in or around December 2014 until November 18, 2016.

172.    Plaintiff alleges defendant KEITH WALTON caused her to incur significant legal costs, emotional distress, and damage to her personal and professional reputation.

## COUNT V
## MONELL CLAIM
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

173.    Plaintiff re-alleges Paragraphs 1 through 172 and incorporates them by reference as Paragraphs 1 through 172 of Count V of this Amended Complaint.

174.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agents caused her injuries.

175.    Plaintiff alleges defendant THE CITY OF NEW YORK actions of implementing 'official and un-official' policies of gender discrimination, retaliation, and illegal 'performance goals' through its agents were under color of law.

176.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agents deprived her of constitutional and statutory rights.

177.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agent's actions caused her injuries.

178.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agents caused her to sustain damages.

## COUNT VI
## NEGLIGENT HIRING
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

179.    Plaintiff re-alleges Paragraphs 1 through 178 and incorporates them by reference as Paragraphs 1 through 178 of Count VI of this Amended Complaint.

180.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agents deprived her of constitutional and statutory rights by hiring and promoting JAMES P. O'NEILL; WILLIAM J. BRATTON; RAYMOND W. KELLY; KEVIN CATALINA; KEITH WALTON;

VANESSA L. GIBSON; DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER
WICZYK; and KATHERINE J. HWANG.

181.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agent's
decision to hire and promote defendants' JAMES P. O'NEILL; WILLIAM J. BRATTON;
RAYMOND W. KELLY; KEVIN CATALINA; KEITH WALTON; VANESSA L. GIBSON;
DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK; and KATHERINE
J. HWANG reflects a deliberate indifference to the risk that a violation of a constitutional or
statutory right would follow.

182.    Plaintiff alleges because defendant THE CITY OF NEW YORK through its
agents decided to hire and promote defendants' JAMES P. O'NEILL; WILLIAM J. BRATTON;
RAYMOND W. KELLY; KEVIN CATALINA; KEITH WALTON; VANESSA L. GIBSON;
DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK; and KATHERINE
J. HWANG she sustained constitutional and statutory injuries.

**COUNT VII**
**FAILURE TO TRAIN**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

183.    Plaintiff re-alleges Paragraphs 1 through 182 and incorporates them by reference
as Paragraphs 1 through 182 of Count VII of this Amended Complaint.

184.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agents knows
to a moral certainty that its employees will confront a given situation.

185.    Plaintiff alleges the situation presents the employee with a difficult choice of the
sort either that training will make less difficult or that there is a history of employees
mishandling the situation.

186.    Plaintiff alleges mishandling those situations will frequently cause the deprivation

of a citizen's constitutional rights.

187.    Plaintiff alleges because defendant THE CITY OF NEW YORK through its agents failure to train its employees regarding gender discrimination, retaliation and illegal 'performance goals' in the workplace she sustained constitutional and statutory injuries.

**COUNT VIII**
**FAILURE TO SUPERVISE**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

188.    Plaintiff re-alleges Paragraphs 1 through 187 and incorporates them by reference as Paragraphs 1 through 187 of Count VIII of this Amended Complaint.

189.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agents knows to a moral certainty that its employees will confront a given situation.

190.    Plaintiff alleges the situation presents the employee with a difficult choice of the sort either that training will make less difficult or that there is a history of employees mishandling the situation.

191.    Plaintiff alleges mishandling those situations will frequently cause the deprivation of a citizen's constitutional rights.

192.    Plaintiff alleges because defendant THE CITY OF NEW YORK through its agents failure to supervise its employees she sustained constitutional and statutory injuries.

**COUNT IX**
**FAILURE TO DISCIPLINE**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

193.    Plaintiff re-alleges Paragraphs 1 through 192 and incorporates them by reference as Paragraphs 1 through 192 of Count IX of this Amended Complaint.

194.    Plaintiff alleges defendant THE CITY OF NEW YORK through its agents

deprived her of constitutional and statutory rights by failing to discipline defendants' JAMES P.

O'NEILL; WILLIAM J. BRATTON; RAYMOND W. KELLY; KEVIN CATALINA; KEITH

WALTON; VANESSA L. GIBSON; DARCEL D. CLARK; WANDA PEREZ-MALDONADO;

OMER WICZYK; and KATHERINE J. HWANG.

195.   Plaintiff alleges defendant THE CITY OF NEW YORK through its agents failure

to discipline defendants' JAMES P. O'NEILL; WILLIAM J. BRATTON; RAYMOND W.

KELLY; KEVIN CATALINA; KEITH WALTON; VANESSA L. GIBSON; DARCEL D.

CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK; and KATHERINE J. HWANG

reflects a deliberate indifference to the risk that a violation of a constitutional or statutory right

would follow.

196.   Plaintiff alleges because defendant THE CITY OF NEW YORK through its agents

failure to discipline defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; WILLIAM J.

BRATTON; RAYMOND W. KELLY; KEVIN CATALINA; KEITH WALTON; VANESSA L.

GIBSON; DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK; and

KATHERINE J. HWANG she sustained constitutional and statutory injuries.

## COUNT X
## GENDER DISCRIMINATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

197.   Plaintiff re-alleges Paragraphs 1 through 196 and incorporates them by reference

as Paragraphs 1 through 196 of Count X of this Amended Complaint.

198.   Plaintiff alleges that New York State Executive Law § 296, makes it unlawful to

discriminate against any individual in the terms, conditions, or privileges of employment because

of their gender.

199.   Plaintiff alleges that defendants' THE CITY OF NEW YORK and KEITH

WALTON discriminated against her because of her gender.

200.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of defendants' THE CITY OF NEW YORK and KEITH WALTON, she suffered the indignity of gender discrimination and great humiliation.

201.    Plaintiff alleges that defendants' THE CITY OF NEW YORK and KEITH WALTON'S violations caused her to incur significant legal costs, emotional distress, and damage to her personal and professional reputation.

**COUNT XI**
**RETALIATION**
**IN VIOLATION OF**
**NEW YORK STATE EXECUTIVE LAW § 296**

202.    Plaintiff re-alleges Paragraphs 1 through 201 and incorporates them by reference as Paragraphs 1 through 201 of Count XI of this Amended Complaint.

203.    Plaintiff alleges that New York State Executive Law § 296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their gender.

204.    Plaintiff alleges that the law also makes it unlawful to create an atmosphere where retaliation is encouraged and/or tolerated.

205.    Plaintiff alleges defendants' THE CITY OF NEW YORK and KEITH WALTON engaged in various retaliatory actions against her based upon opposition to gender discrimination.

206.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of defendants' THE CITY OF NEW YORK and KEITH WALTON, she suffered the indignity of gender discrimination.

207.    Plaintiff alleges that defendants' THE CITY OF NEW YORK and KEITH

WALTON'S violations caused her to incur significant legal costs, emotional distress, and damage to her personal and professional reputation.

## COUNT XII
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

208.    Plaintiff re-alleges Paragraphs 1 through 207 and incorporates them by reference as Paragraphs 1 through 207 of Count XII of this Complaint.

209.    Plaintiff alleges that New York State Executive Law § 296, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their gender.

210.    Plaintiff alleges that the law also makes it unlawful to create an atmosphere where hostilities are encouraged and/or tolerated.

211.    Plaintiff alleges defendants' THE CITY OF NEW YORK and KEITH WALTON engaged in various hostile actions against her based upon opposition to gender discrimination.

212.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of defendants' THE CITY OF NEW YORK and KEITH WALTON, she suffered the indignity of gender discrimination.

213.    Plaintiff alleges that defendants' THE CITY OF NEW YORK and KEITH WALTON'S violations caused her to incur significant legal costs, emotional distress, and damage to her personal and professional reputation.

## COUNT XIII
## GENDER DISCRIMINATION
## IN VIOLATION OF
## NEW YORK CITY ADMINISTRATIVE CODE § 8-107

214.    Plaintiff re-alleges Paragraphs 1 through 213 and incorporates them by reference

as Paragraphs 1 through 213 of Count XIII of this Amended Complaint.

215.    Plaintiff alleges that New York City Administrative Code § 8-107, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their gender.

216.    Plaintiff alleges that defendants' THE CITY OF NEW YORK and KEITH WALTON discriminated against her because of her gender.

217.    Plaintiff alleges that as a direct and proximate result of the unlawful employment practices of defendants' THE CITY OF NEW YORK and KEITH WALTON, she suffered the indignity of gender discrimination and great humiliation.

218.    Plaintiff alleges that defendants' THE CITY OF NEW YORK and KEITH WALTON'S violations caused her to incur significant legal costs, emotional distress, and damage to her personal and professional reputation.

**COUNT XIV**
**RETALIATION**
**IN VIOLATION OF**
**NEW YORK CITY ADMINISTRATIVE CODE § 8-107**

219.    Plaintiff re-alleges Paragraphs 1 through 218 and incorporates them by reference as Paragraphs 1 through 218 of Count XIV of this Amended Complaint.

220.    Plaintiff alleges that New York City Administrative Code § 8-107, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment because of their gender.

221.    Plaintiff alleges that the law also makes it unlawful to create an atmosphere where retaliation is encouraged and/or tolerated.

222.    Plaintiff alleges defendants' THE CITY OF NEW YORK and KEITH WALTON engaged in various retaliatory actions against her based upon opposition to gender

discrimination.

223.    Plaintiff alleges that as a direct and proximate result of the unlawful employment

practices of defendants' THE CITY OF NEW YORK and KEITH WALTON, she suffered the

indignity of gender discrimination.

224.    Plaintiff alleges that defendants' THE CITY OF NEW YORK and KEITH

WALTON'S violations caused her to incur significant legal costs, emotional distress, and

damage to her personal and professional reputation.

## COUNT XV
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

225.    Plaintiff re-alleges Paragraphs 1 through 224 and incorporates them by reference

as Paragraphs 1 through 224 of Count XV of this Amended Complaint.

226.    Plaintiff alleges that New York City Administrative Code § 8-107, makes it

unlawful to discriminate against any individual in the terms, conditions, or privileges of

employment because of their gender.

227.    Plaintiff alleges that the law also makes it unlawful to create an atmosphere where

hostilities are encouraged and/or tolerated.

228.    Plaintiff alleges defendants' THE CITY OF NEW YORK and KEITH WALTON

engaged in various hostile actions against her based upon opposition to gender discrimination.

229.    Plaintiff alleges that as a direct and proximate result of the unlawful employment

practices of defendants' THE CITY OF NEW YORK and KEITH WALTON, she suffered the

indignity of gender discrimination.

230.    Plaintiff alleges that defendants' THE CITY OF NEW YORK and KEITH

WALTON'S violations caused her to incur significant legal costs, emotional distress, and

damage to her personal and professional reputation.

## JURY TRIAL

231.    Plaintiff demands a trial by jury of all issues in this action that are so triable

## PRAYER FOR RELIEF

Wherefore, plaintiff demands compensatory and punitive damages from

defendants' THE CITY OF NEW YORK; JAMES P. O'NEILL; WILLIAM J. BRATTON;

RAYMOND W. KELLY; KEVIN CATALINA; KEITH WALTON; VANESSA L. GIBSON;

DARCEL D. CLARK; WANDA PEREZ-MALDONADO; OMER WICZYK; and KATHERINE

J. HWANG for $35 million dollars plus available statutory remedies, both legal and equitable,

interests and costs.

Dated:  April 28, 2017
        New York, N.Y.

                                Respectfully submitted,


                                By:    _____s_____
                                       Eric Sanders (ES0224)

                                Eric Sanders, Esq.
                                **THE SANDERS FIRM, P.C.**
                                230 Park Avenue, Suite 1000
                                New York, NY 10169
                                (212) 808-6515 (Business Telephone)
                                (212) 729-3062 (Facsimile)

                                Website: http://www.thesandersfirmpc.com

**EXHIBIT 1**

WRITE HARD - YOU ARE MAKING 6 COPIES

AAW9075382

New York State - Department of Motor Vehicles
SIMPLIFIED INFORMATION / COMPLAINT
The People of The State of New York VS.

POLICE AGENCY
NYPD

LAST NAME: GIBSON     FIRST NAME: VANESSA     M.I.: L.     LOCAL POLICE CODE: 844

SEX: F

STATE: NY     VEH. TYPE: 4DS

THE PERSON DESCRIBED ABOVE IS CHARGED AS FOLLOWS

TIME (24 hour HHMM): 1900     DATE OF OFFENSE (MM/DD/YY): 03/11/14

IN VIOLATION OF: (SECTION AND SUBDIVISION): 1225C3

DESCRIPTION / NARRATIVE:

Improper Use of
cellular Phone

PLACE OF OCCURRENCE

IN THE: ○ City ○ Town ○ Village
OF:     COUNTY OF:     PRECINCT:
COMPLAINANT SIGN AND PRINT NAME/RANK  Affirmed under penalty of perjury.

RADAR OPERATOR NAME (Print)

DATE AFFIRMED     ARREST TYPE     OFFICER I.D. #     OFFICER'S COMMAND

THIS MATTER IS SCHEDULED TO BE HANDLED ON THE APPEARANCE DATE BELOW IN EITHER THE:
TRAFF. VIOL. BUREAU IN:     OR THE ○ City ○ Town ○ Village ○ Criminal ○ District
COURT OF:     COUNTY OF:     BUILDING PART

ADDRESS

CITY     STATE     ZIP CODE

○ RETURN BY MAIL BEFORE, OR IN PERSON ON:     at     M
○ MUST APPEAR IN PERSON ON:

FOR COURT USE ONLY

COURT CODE     JUSTICE CODE     DATE ADJUDICATED     DATE SENTENCE IMPOSED

CHARGE COMMITTED OF: ○ AS ABOVE ○ VTL ○ OTHER DISPOSITION / SENTENCE     FINE
SURCHARGE

BAIL FORFEITURE     DATE     ○ UC ○ REV ○ SUSP ○ MAND ○ PERM     DATE / MONTHS / YEARS

AAW9075382

UT-60 (4/13)

**EXHIBIT 2**

# PATROL GUIDE



| Section: Summonses | Procedure No: 209-18 |
|---|---|

## SUMMONS SERVED OR PREPARED IN ERROR

| DATE ISSUED:<br>08/01/13 | DATE EFFECTIVE:<br>08/01/13 | REVISION NUMBER: | PAGE:<br>1 of 2 |
|---|---|---|---|

**PURPOSE**    To investigate the circumstances concerning issuance of a summons in error.

**PROCEDURE**    When a uniformed member of the service issues or prepares a summons in error:

<u>WHEN ALL PARTS OF SUMMONS ARE AVAILABLE:</u>

**UNIFORMED**    1.    Bring all parts of summons to the command.
**MEMBER OF**    2.    Inform commanding officer of the facts.
**THE SERVICE**    3.    Surrender all parts of the summons to commanding officer.

**COMMANDING**    4.    Conduct investigation.
**OFFICER**    5.    Prepare **SUMMONS VOIDANCE FORM (PD160-153).**
          a.    Ensure summons is scanned into the Electronic Summons Tracking System (ESTS) utilizing bar code reader.
          b.    If bar code reader is inoperable, entries will be made into ESTS manually.
          c.    Notify patrol borough of defective/inoperable bar code reader and obtain replacement.
          d.    Enter notification in Telephone Record.
     6.    Mark all copies of summons "Void" across face.
     7.    Forward first two copies of **FORM** with all parts of summons to Chief of Department, Investigation Review Section, DIRECT.

<u>WHEN VIOLATOR'S PART IS NOT AVAILABLE OR PARTS HAVE BEEN FORWARDED FOR PROCESSING:</u>

**COMMANDING**    8.    Conduct investigation.
**OFFICER**    9.    Prepare **SUMMONS VOIDANCE FORM (PD160-153).**
          a.    Ensure summons is scanned into ESTS utilizing bar code reader
          b.    If bar code reader is inoperable, entries will be made into ESTS manually
          c.    Notify patrol borough of defective/inoperable bar code reader and obtain replacement
          d.    Enter notification in Telephone Record.
   10.    Confer with Commanding Officer, Investigation Review Section prior to processing report of investigation, IF agency copy of summons has been forwarded to the appropriate adjudicating agency prior to discovery of error, or is otherwise unavailable. DO NOT deal directly with adjudicating agency in these cases.
   11.    DO NOT mark copies of summons "VOID".
   12.    Forward first two copies of **SUMMONS VOIDANCE FORM** with available copies of summons to Chief of Department Investigation Review Section, through channels.

# NEW • YORK • CITY • POLICE • DEPARTMENT

# PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 209-18 | 08/01/13 | | 2 of 2 |

| | | |
|---|---|---|
| **COMMAND CLERK** | 13. | File remaining copy of **SUMMONS VOIDANCE FORM** with photocopy of summons. |
| ***ADDITIONAL DATA*** | | *The Commanding Officer, Investigation and Review Section will ensure that one copy of the **SUMMONS VOIDANCE FORM** is forwarded to the Chief of Internal Affairs when a summons is voided for Penal Law Section 240.35, "Loitering" subsections 1, 3 or 7.* |
| ***FORMS AND REPORTS*** | | ***SUMMONS VOIDANCE FORM (PD160-153)*** |

**NEW • YORK • CITY • POLICE • DEPARTMENT**

**EXHIBIT 3**

 **Vanessa L. Gibson**
@Vanessalgibson

 👤+ Follow    ⌄

# The Inauguration of our new Bronx DA Darcel Clark, great day for the #BX #NYS & the #USA @Bronxnet #HerStory



| RETWEETS | LIKES |
|----------|-------|
| 2        | 6     |



7:14 PM - 16 Jan 2016 from Bronx, NY

↩ 2     ⇄ 2     ≋     ♥ 6

 Tweet your reply

 ✨ Nikki4u ✨ ™ @LoveSugar221 · 16 Jan 2016     ⌄
Replying to @Vanessalgibson
@Vanessalgibson @Bronxnet History has definitely been made congratulations to the new DA Darcel Clark. I'm so glad to have been her student.

↩     ⇄     ≋     ♥ 1

**EXHIBIT 4**

# NYPD cop claims she was ordered to nix ticket for city pol

BY **JOHN MARZULLI**

NEW YORK DAILY NEWS     Monday, August 15, 2016, 4:00 AM



City Councilwoman Vanessa Gibson allegedly got a free pass on a ticket for talking on a cell phone while driving. Gibson claims she doesn't recall the incident. (ANDREW LAMBERSON/ANDREW LAMBERSON FOR NEW YORK DA)

A Bronx cop said she was ordered by her commanding officer to give a city councilwoman a free pass on a summons for yakking on her cell phone while driving.

The incident is described in a notice to sue the city for $75 million filed last week by Officer Michele Hernandez, who claims she has been retaliated against by supervisors for not fulfilling their summons-writing quotas.

Hernandez, a 14-year veteran, had pulled over Councilwoman Vanessa Gibson's vehicle about 7 p.m. on March 11, 2014, after spotting her talking on the phone, according to the legal papers.

The cop, who was assigned to summons duty full-time, began writing the ticket, which carries penalties of a fine of up to $200 and five points on a driver's license.

Gibson (D-Bronx) allegedly called then-Deputy Inspector Kevin Catalina of the 44th Precinct from her car, and within minutes, Hernandez received "numerous" notifications over her department radio to contact the stationhouse.



Hernandez was instructed by a lieutenant to squash the summons, the legal papers state. She returned to the councilwoman's car, and Gibson put the cop on the phone with Catalina himself.

"Catalina begged (Hernandez), 'Please don't write the summons because she (Gibson) meets with the mayor and the police commissioner monthly in her role with the Public Safety Committee,' " the notice states.

Then-Inspector Kevin Catalina (pictured) allegedly begged cop Michele Hernandez to ditch the summons. (SETH WENIG/AP)



PAID CONTENT BY COUCHBASE
Going from SQL Server to NoSQL

Hernandez let the elected official go, and since the summons was already written, she filled in the wrong code for the violation so that it could be voided. Hernandez kept a copy of the summons "because she knew it was wrong but had nowhere to file her complaint," said her lawyer, Eric Sanders.

Gibson issued a statement claiming she "does not recall this incident from March of 2014, but always takes very seriously and complies with all of our traffic laws."

Hernandez's lawyer said the incident underscores the hypocrisy of the NYPD, which he said generates ticket quota revenue off the backs of New Yorkers but has no problem fixing a ticket as a favor to an influential person.

Sixteen cops were indicted by former Bronx District Attorney Robert Johnson in 2011 for fixing tickets for friends and relatives.

Roy Richter, president of the Captains Endowment Association, said Catalina, who is now a deputy chief, "denies any inappropriate conduct took place."



Here is copy of the voided summons issued to Councilwoman Vanessa Gibson in an redacted version. (NEW YORK DAILY NEWS)

Hernandez's notice alleges that she has been subjected to unfair assignments and discipline for "passively" rejecting the ticket quotas. She is currently assigned to the 49th Precinct in the Bronx.

A police spokesman denied there are arrest or summons quotas.

© 2016 New York Daily News

**EXHIBIT 5**

# City councilwoman in NYPD ticket-squashing scandal will stay put

BY **ERIN DURKIN**

DAILY NEWS CITY HALL BUREAU　　Tuesday, August 16, 2016, 2:20 PM



City Councilwoman Vanessa Gibson of District 16 does not remember the traffic stop that led to her NYPD kerfuffle, she says. (BARRY WILLIAMS/FOR NEW YORK DAILY NEWS)

City Councilwoman Vanessa Gibson will keep her post as chair of the public safety committee despite allegations she used her position to avoid a ticket for talking on her cell phone while driving, Speaker Melissa Mark-Viverito said Tuesday.

"Vanessa has been a great public safety chair, and she has the respect of a lot, of all her colleagues. Overall, she's a respected Council member," Mark-Viverito told reporters. "So any concerns about having used her position, that has to be taken up by the proper entities in order to look at that. But right now, she's a respected individual and a respected member of this body, and she will continue to serve as public safety chair at the moment."

As the Daily News reported, a Bronx cop charged in a notice to sue the city that she was ordered by her commanding officer to let Gibson off after pulling her over for talking on the phone.

She said the Bronx Democrat called then-Deputy Inspector Kevin Catalina, and Catalina and a lieutenant both instructed her not to give the pol a summons.

Mark-Viverito said the city Conflicts of Interest Board should examine the incident, but the Council will take no action for now.

"She currently serves and will continue to serve as our public safety chair," she said.

Gibson has said she doesn't remember the run-in.

© 2016 New York Daily News

**EXHIBIT 6**

# PATROL GUIDE



| Section: Personnel Matters | | Procedure No: 205-38 | |
|---|---|---|---|
| **INVESTIGATION OF INCIDENTS OF RETALIATION AGAINST MEMBERS OF THE SERVICE** | | | |
| DATE ISSUED:<br>08/01/13 | DATE EFFECTIVE:<br>08/01/13 | REVISION NUMBER: | PAGE:<br>1 of 3 |

**PURPOSE**  To provide guidelines in accordance with the provisions of the Whistleblowers Law for the investigation of allegations of retaliation made by members of the service who have voluntarily reported misconduct or corruption.

**DEFINITION**  <u>WHISTLEBLOWERS LAW</u> - An Administrative Code provision which encourages City employees to report improper conduct, i.e., corruption, criminal activity, conflict of interest, gross mismanagement or abuse of authority, within their respective agencies. This law protects City employees who report such wrongdoing from any form of retaliation, i.e., dismissal, demotion, suspension, disciplinary action, negative performance evaluation, any action resulting in loss of staff, office space or equipment or other benefit, failure to appoint, failure to promote, or any transfer or assignment or failure to transfer or assign against the wishes of the affected employee.

**SCOPE**  The Department has the responsibility to encourage members to come forward and voluntarily provide information regarding misconduct and corruption. Inherent in this responsibility is the ability to protect those members from retaliation. IT IS THE POLICY OF THIS DEPARTMENT THAT RETALIATION AGAINST ANY MEMBER OF THE SERVICE FOR VOLUNTARILY PROVIDING INFORMATION REGARDING MISCONDUCT AND CORRUPTION <u>WILL NOT</u> BE TOLERATED.

**PROCEDURE**  When a member of the service believes he/she is the victim of retaliation for voluntarily providing information regarding misconduct or corruption.

**MEMBER OF THE SERVICE**  1.  Notify Internal Affairs Bureau Command Center at (212) 741-8401.

**NOTE**  *A member of the service may elect to report that he or she has been the victim of retaliation as outlined in this procedure directly to the Employee Relations Section. If such a complaint is received at the Employee Relations Section, or any unit other than the Internal Affairs Bureau (whether from the member directly or from an outside agency/organization) the unit receiving the complaint MUST notify the Internal Affairs Bureau and forward all pertinent information directly to the Internal Affairs Bureau for appropriate action.*
*Any member of the service who is made aware of an allegation of retaliation for reporting wrongdoing shall make reasonable efforts to protect the anonymity and confidentiality of the employee making the allegation.*

**MEMBER CONCERNED, IAB COMMAND CENTER**  2.  Record pertinent information and assign a log number.
3.  Have an immediate preliminary investigation conducted to obtain all available facts and evidence.
    a.  Indicate results in log.

**NEW • YORK • CITY • POLICE • DEPARTMENT**

# PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 205-38 | 08/01/13 | | 2 of 3 |

**NOTE**  *Members of the service should comply with the provisions of P.G. 205-36, "Employment Discrimination," to lodge a complaint of retaliation regarding an equal employment opportunity issue. Allegations of retaliation involving equal employment opportunity issues (employment discrimination, sexual harassment, etc.) MUST be referred to the Office of Equal Employment Opportunity for investigation.*

**CHIEF OF INTERNAL AFFAIRS**

4. Evaluate each complaint to determine whether the case may fall within the purview of the Whistleblowers Law.

5. Refer cases requiring further investigation concerning violations of the Whistleblowers Law to either the Internal Affairs Bureau or Office of Equal Employment Opportunity, as applicable.

**NOTE**  *Only the Internal Affairs Bureau or Office of Equal Employment Opportunity are authorized to conduct investigations involving allegations of retaliation against any member of the service for voluntarily having provided information regarding misconduct or corruption. Allegations which do not violate the Whistleblowers Law will be referred to the appropriate investigative unit concerned for additional action.*

6. Forward notification to the Employee Relations Section of allegations of violations of the Whistleblower Law. Notification will NOT be made for allegations that have been referred to OEEO.

**NOTE**  *In certain instances, to maintain the confidentiality of an associated investigation, notification to the Employee Relations Section will not be made until such time as the Internal Affairs Bureau deems it appropriate.*

**EMPLOYEE RELATIONS SECTION**

7. Contact complainant upon receipt of notification and offer the services of the appropriate Department employee assistance program.

**IAB INVESTIGATIVE GROUP**

8. Forward report through channels upon completion of investigation.

**NOTE**  *Due to the need to maintain the confidentiality of investigations to the extent possible, OEEO will not be required to forward reports of employment discrimination retaliation. These reports will remain on file at OEEO until such time that disclosure thereof is necessary.*

**CHIEF OF INTERNAL AFFAIRS**

9. Forward report and recommendations to the Police Commissioner.

**POLICE COMMISSIONER**

10. Review report and direct necessary action.

**NEW • YORK • CITY • POLICE • DEPARTMENT**

# PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 205-38 | 08/01/13 | | 3 of 3 |

| | |
|---|---|
| ***ADDITIONAL DATA*** | *Members of the service are reminded that the Department has several employee assistance units available to provide help in addressing a personal or professional problem.  To obtain additional information regarding the types of services provided by these units, members can refer to the Department publication entitled EMPLOYEE ASSISTANCE PROGRAMS AND RESOURCE BOOKLET (BM497).* |
| | *Members of the service who voluntarily provide information or assistance in internal/external investigations should be acknowledged for their high acts of integrity. In order to acknowledge such members, while maintaining the confidentiality of their actions, a sub-committee of the Integrity Review Board is established.  This special sub-committee shall consist of the First Deputy Commissioner, Chief of Personnel, and the Chief of Internal Affairs (principals only, no representatives).   It will be the responsibility of the sub-committee to review the actions of those members of the service who have voluntarily come forward and provided information, and recommend appropriate acknowledgement to the Police Commissioner.* |
| ***RELATED PROCEDURES*** | *Employment Discrimination (P.G. 205-36)* |
| ***FORMS AND REPORTS*** | ***Typed Letterhead*** |

**NEW • YORK • CITY • POLICE • DEPARTMENT**

# PATROL GUIDE



| Section: Disciplinary Matters | Procedure No:   206-13 |
|---|---|

**INTERROGATION OF MEMBERS OF THE SERVICE**

| DATE ISSUED:<br>08/01/13 | DATE EFFECTIVE:<br>08/01/13 | REVISION NUMBER: | PAGE:<br>1 of 3 |
|---|---|---|---|

**PURPOSE**      To protect the rights of the member of the service (uniformed or civilian) in an official Department investigation.

**PROCEDURE**      Prior to questioning a member of the service (uniformed or civilian) who is the subject or a witness in an official investigation:

**INTERROGATING**      1.      Permit member to obtain counsel if:
**OFFICER**
        a.      A serious violation is alleged, <u>OR</u>
        b.      Sufficient justification is presented although the alleged violation is minor.

*NOTE*      *All members of the service who are the subject of an official investigation or are a witness in an official investigation, shall be given a reasonable period of time to obtain and confer with counsel prior to questioning.  Interrogations of members in routine, non-critical matters should be scheduled during business hours on a day when the member is scheduled to work.*

*Interrogations in emerging investigation, where there is a need to gather timely information, should usually be done after all preliminary steps and conferrals have been completed and the member to be questioned has been afforded a reasonable time to obtain and confer with counsel.  In determining what is a reasonable period of time, consideration should be given to the nature of the investigation, the need for the Department to have the information possessed by the member in a timely manner, and the stage the investigation is at when the need to question the member has been determined.  The emergent nature and exigent circumstances of each investigation will determine the length of time afforded the member before questioning is conducted.  However, in all cases the determination as to what is a reasonable time will be made by the captain (or above) in charge of the investigation.*

      2.      Inform member concerned of:
        a.      Rank, name and command of person in charge of investigation
        b.      Rank, name and command of interrogating officer
        c.      Identity of all persons present
        d.      Whether he is subject or witness in the investigation, if known
        e.      Nature of accusation
        f.      Identities of witnesses or complainants (address need not be revealed) <u>except</u> those of confidential source or field associate unless they are witnesses to the incident
        g.      Information concerning all allegations.
        h.      The Department's policy regarding making false statements (*see P.G. 203-08).*
      3.      Permit representative of department line organization to be present at all times during interrogation.
      4.      Conduct interrogation at reasonable hour, preferably when member is on duty during daytime hours.

## NEW • YORK • CITY • POLICE • DEPARTMENT

**PATROL GUIDE**

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 206-13 | 08/01/13 | | 2 of 3 |

**INTERROGATING OFFICER** (continued)

5.    Ensure that interrogation is recorded either mechanically or by a department stenographer.

    a.    The Department Advocate will determine if a transcript is required in non-criminal or minor violation cases.

6.    <u>DO NOT</u> use:

    a.    "Off the record" questions

    b.    Offensive language or threats (transfer, dismissal or other disciplinary punishment)

    c.    Promises of reward for answering questions.

7.    Regulate duration of question periods with breaks for meal, personal necessity, telephone call, etc.

8.    Record all recesses.

**NOTE**

*Interrogations may be conducted before or after **CHARGES AND SPECIFICATIONS (PD468-121)** have been served. An interrogation conducted after service of charges <u>must</u> be completed at least ten days prior to the date of Department trial <u>except</u> as directed by the Deputy Commissioner - Trials.*

9.    Conduct interrogation within a reasonable time after disposition of criminal matter, when member was arrested, indicted or under criminal investigation.

**DEPARTMENT ADVOCATE**

10.    Furnish member with copy of tape of interrogation <u>no later than</u> twenty days after service of charges.

    a.    If interrogation was conducted after service of charges, tape must be furnished to member <u>no later than</u> five days after interrogation

    b.    Furnish transcript, if one was prepared, by 1000 hours on trial date, in <u>all</u> cases.

**NOTE**

*When the Department trial date is scheduled immediately after **CHARGES AND SPECIFICATIONS** are served, the Deputy Commissioner - Trials will grant the Department reasonable time to conduct an interrogation. In any event, a copy of the tape and a copy of the transcript <u>must</u> be furnished as indicated above, if appropriate.*

**COMMANDING OFFICER OF MEMBER**

11.    Assign member to 2nd Platoon, if possible.

**MEMBER OF THE SERVICE**

12.    Answer questions specifically directed and narrowly related to official duties. (Refusal shall result in suspension from duty).

13.    Submit **OVERTIME REPORT (PD138-064)** if lost time accrues as result of investigation.

**SUPERVISOR IN CHARGE OF INVESTIGATION**

14.    Notify the desk officer immediately when member of the service is directed to leave his post or assignment to report for an official investigation.

**NEW • YORK • CITY • POLICE • DEPARTMENT**

# PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 206-13 | 08/01/13 | | 3 of 3 |

**SUPERVISOR IN CHARGE OF INVESTIGATION (continued)**

15. Ensure that notifications concerning official investigations are properly recorded in appropriate Department records when made to or recorded from:
    a. Complainants
    b. Witnesses
    c. Lawyers
    d. Respondents
    e. Other interested parties.

**DESK OFFICER**

16. Record in appropriate department records and notify the investigating command immediately of notifications or messages received from:
    a. Lawyers
    b. Witnesses
    c. Complainants
    d. Other interested parties involved in the subject investigation.

**ADDITIONAL DATA**

*If a member of the service (uniformed or civilian) is under arrest or is the subject of a criminal investigation or there is a likelihood that criminal charges may result from the investigation, the following warnings shall be given to the member concerned prior to commencement of the interrogation:*

*"I wish to advise you that you are being questioned as part of an official investigation by the Police Department. You will be asked questions specifically directed and narrowly related to the performance of your duties. You are entitled to all the rights and privileges guaranteed by the laws of the State of New York, the Constitution of this state and the Constitution of the United States, including the right not to be compelled to incriminate yourself and the right to have legal counsel present at each and every stage of this investigation.*

*I further wish to advise you that if you refuse to testify or to answer questions relating to the performance of your official duties, you will be subject to departmental charges, which could result in your dismissal from the Police Department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceedings. However, these statements may be used against you in relation to subsequent departmental charges."*

*The questions and answers resulting from the interrogation conducted pursuant to this procedure are confidential. They are not to be revealed nor released to any person or agency outside the department <u>without</u> prior written approval of the Deputy Commissioner - Legal Matters. If a subpoena duces tecum is received for any such questions and answers, the Legal Bureau should be contacted <u>immediately</u>.*

**FORMS AND REPORTS**

***CHARGES AND SPECIFICATIONS (PD468-121)***
***OVERTIME REPORT (PD138-064)***

# NEW • YORK • CITY • POLICE • DEPARTMENT

# PATROL GUIDE

| Section: Complaints | Procedure No: 207-21 |
|---|---|

## ALLEGATIONS OF CORRUPTION AND OTHER MISCONDUCT AGAINST MEMBERS OF THE SERVICE

| DATE ISSUED: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 08/01/13 | 08/01/13 | | 1 of 2 |

**PURPOSE**  To process allegations of corruption and other misconduct against members of the service.

**SCOPE**  All members of the service must be incorruptible. An honest member of the service will not tolerate members of the service who engage in corruption or other misconduct. All members of the service have an absolute duty to report any corruption or other misconduct, or allegation of corruption or other misconduct, of which they become aware.

**DEFINITION**  CORRUPTION/OTHER MISCONDUCT: Criminal activity or other misconduct of any kind including the use of excessive force or perjury that is committed by a member of the service whether on or off duty.

**PROCEDURE**  Upon observing, or becoming aware of corruption or other misconduct or upon receiving an allegation of corruption or other misconduct involving a member of the service:

*NOTE*  *To prevent interruption or delay in vital services, a telephone switchboard operator will refer any allegation of corruption or other misconduct to the desk officer, who will record the details of the allegation(s).*

**MEMBER OF THE SERVICE CONCERNED**
1. Telephone Internal Affairs Bureau, Command Center (212) 741-8401 (24 hours) or 1-800-PRIDE PD (24 hours) or (212) CORRUPT (24 hours).
   a. Give preliminary facts.
   b. Identify self or, if opting to remain anonymous, obtain Confidential Identification Number from the Command Center investigator.
   c. Furnish details of corruption or other misconduct.

*NOTE*  *In certain cases, supervisory personnel assigned to the Command Center of the Internal Affairs Bureau may direct on duty members not reporting anonymously to prepare a detailed written report in addition to a telephone notification or request the member(s) concerned to await the arrival of an investigator.*

**OR**

2. Prepare a detailed written report addressed to the Chief of Internal Affairs.
   a. Forward DIRECT, or via FAX (212) 741-8408, to the Command Center, 315 Hudson Street, within twenty-four hours.

## NEW • YORK • CITY • POLICE • DEPARTMENT

# PATROL GUIDE

| PROCEDURE NUMBER: | DATE EFFECTIVE: | REVISION NUMBER: | PAGE: |
|---|---|---|---|
| 207-21 | 08/01/13 | | 2 of 2 |

### MEMBERS MAY OPT TO REPORT ALLEGATIONS OF CORRUPTION/ OTHER MISCONDUCT IN WRITING ANONYMOUSLY

**MEMBER OF THE SERVICE CONCERNED (continued)**

3.    Prepare a detailed written report, upon becoming aware of misconduct, and forward to:
    a.    Chief of Internal Affairs, or
    b.    Box 1001, New York, N.Y. 10014.

**NOTE**

*Obtaining a Confidential Identification Number from the Command Center investigator will satisfy the member's reporting responsibility, if the information reported is accurate and complete. Subsequent or ongoing reporting is encouraged to insure the information is timely and complete and may be made by referencing the Confidential Identification Number.*

**ADDITIONAL DATA**

*A member of the service having or receiving information relative to corruption or other misconduct, or an allegation of corruption or other misconduct, has the responsibility to report such information directly to the Internal Affairs Bureau, Command Center.*

*Failure to report corruption, other misconduct, or allegations of such act is, in itself, an offense of serious misconduct and will be charged as such when uncovered during an investigation. Conduct designed to cover up acts of corruption, prevent or discourage its report, or intimidate those who would report it, will be charged as an obstruction of justice or other criminal act with the consent of the prosecutor who has criminal jurisdiction.*

*A member of the service receiving an allegation of corruption against oneself will request a supervising officer to respond to the scene. The supervising officer will interview the complainant and confer with the Internal Affairs Bureau, Command Center, BEFORE interviewing the member concerning the allegation.*

**RELATED PROCEDURES**

*Allegations of Corruption Against City Employees (Other than Members of the New York City Police Department) (P.G. 207-22)*
*Processing Civilian Complaints (P.G. 207-31)*
*Civilian Complaints - Witness Statement (P.G. 207-30)*

## NEW • YORK • CITY • POLICE • DEPARTMENT



# PATROL GUIDE

| Section: Complaints | Procedure No: 207-22 |
|---|---|

## ALLEGATIONS OF CORRUPTION AGAINST CITY EMPLOYEES (OTHER THAN MEMBERS OF THE NEW YORK CITY POLICE DEPARTMENT)

| DATE ISSUED: 08/01/13 | DATE EFFECTIVE: 08/01/13 | REVISION NUMBER: | PAGE: 1 of 1 |
|---|---|---|---|

| | |
|---|---|
| **PURPOSE** | To record allegations of corruption and/or serious misconduct and/or misconduct against federal, state or city employees, other than members of this Department, and provide for notifications to the appropriate agency. |
| **PROCEDURE** | Upon receiving, or becoming aware of, an allegation of corruption and/or serious misconduct and/or misconduct against a federal, state or city employee, other than a member of this Department: |

**MEMBER OF THE SERVICE**

1. Report the facts immediately to commanding officer, or if absent, the highest-ranking supervisor in the command.
2. Telephone Internal Affairs Bureau, Command Center (212) 741-8401 (24 hours) and:
   a. Identify self
   b. Give telephone number where you can be reached
   c. Give preliminary facts
   d. Comply with instructions of ranking officer, Internal Affairs Bureau.

**SUPERVISORY MEMBER**

3. Prepare report on **Typed Letterhead**, addressed to the Chief of Internal Affairs with all details.
   a. Forward original and copy in sealed white envelope addressed to:
   Internal Affairs Bureau, Command Center
   315 Hudson Street, 3rd Floor
   New York, New York 10013

*NOTE*

*A complaint against a federal, state or city employee other than a member of this Department, that does <u>not</u> involve an allegation of corruption and/or serious misconduct and/or misconduct (for example, Driving While Intoxicated or Domestic Violence) will be processed in accordance with the provisions of P.G. 207-01, "Complaint Reporting System."*

*RELATED PROCEDURES*

*Complaint Reporting System (P.G. 207-01)*
*Preliminary Investigation of Complaints (Other than Vice Related or Narcotics Complaints) (P.G. 207-07)*
*Allegations of Corruption and Other Misconduct Against Members of the Service (P.G. 207-21)*

*FORMS AND REPORTS*

*Typed Letterhead*

**NEW • YORK • CITY • POLICE • DEPARTMENT**

**EXHIBIT 7**

ADA Huaños
718-838-7415

PHONE : 718 - 838 - 8083 / 8084

**COURT ASSIGNMENT REQUEST**
**BRONX COUNTY DISTRICT ATTORNEY'S OFFICE**

Today's Date 4/3/17    Time 12:40pm
1. D.A. Copy    2. ACU Copy    3. Witness Not

**A.D.A. INFORMATION**
Name _Huaños_    Bureau _PIB_
Phone # (718) 880-7415    Fax # (718) 590-6760    Room # 683    [ ] Report to Criminal Court Bldg.    [ ] Report to Supreme Court Bldg.    REPORT # THE D.A.  OFFICE

**CASE INFORMATION**    GJ # 4362?/2016
People v. ____    Docket #: ____
Charge: ____    Incident Date: ____
Arrest Date ____    Arrest # ____
Ballistics # ____    Lab. # ____    Bus # ____
Crime Scene Run # ____
Supervisor's Signature (if necessary) ____

**Assignment For:**
[ ] Criminal Court    [ ] Grand Jury
[ ] Supreme Court    [ ] Family Court

**Status:**
1. [ ] Must Appear:
   [ ] Case may be dismissed if P.D. does not app
   [ ] Judge Ordered    [ ] Grand Jury Case li
   [ ] Ongoing Trial/Hearing
2. [ ] Appear:
   [ ] Trial/Hearing    [ ] DA Assignment    [ ] Ind F
3. [ ] Alert:
   [ ] Trial/Hearing    [ ] DA Assignment    [ ] Ind P
4. [ ] In Jail    [ ] Not in Jail

**OFFICER(S) MUST BRING**    [ ] All Police Reports, Handwritten Original Reports & Notes    [ ] Evidence (Voucher Nos): ____    [ ] All Memo Books & Notebooks relate
[ ] Other Messages: ____

**OFFICER INFORMATION**
Date Needed: 4/25/17    Time: 10 AM
Part (if court): ____    Report to Room: 6th floor 198 E. Abst St.

**FOR ACU USE ONLY - Please Print Using Ballpoint Pen**

| Rank | Name | Shield/Tax Reg | Command | Date/Time of ACU Notification to Precinct/Command | Name of Person at ACU Making Notification to Precinct/Command | Name of Person at Precinct/ Command Accepting Notification from ACU | P.O. will appear Yes/No | Reason |
|------|------|----------------|---------|---------------------------------------------------|-------------------------------------------------------------|---------------------------------------------------------------------|-------------------------|--------|
| PO | Michele Homanda | | PBT Bronx | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

F: 116 - 070 - 0047

F: 76 - 378 - 1574

**COURT ASSIGNMENT REQUEST**
**BRONX COUNTY DISTRICT ATTORNEY'S OFFICE**

Today's Date 4/12/17   Time 3:40 pm

1. D.A. Copy    2. ACU Copy    3. Witness Noti

**A.D.A. INFORMATION**
Name _____ Bureau _____
Phone # (718) 590-___ Fax # (718) ___ Room # ___  [ ] Report to Criminal Court Bldg.   [ ] Report to Supreme Court Bldg.

**CASE INFORMATION**
People v. ___ GJ #45627/2016 ___ Docket # ___
Charge: _____ Incident Date: _____
Arrest Date ___ Arrest # ___
Ballistics # ___ Lab. # ___ Run # ___
Crime Scene Run # ___
Supervisor's Signature (if Necessary) _____

**Assignment For:**
[ ] Criminal Court    [ ] Grand Jury
[ ] Supreme Court    [ ] Family Court

**Status:**
1. [ ] Must Appear:
  - [ ] Case may be dismissed if P.O. does not app
  - [ ] Judge Ordered    [ ] Grand Jury Case 'ti
  - [ ] Ongoing Trial/Hearing
2. [ ] Appear:
  - [ ] Trial/Hearing    [ ] DA Assignment    [ ] Trial P
3. [ ] Alert:
  - [ ] Trial/Hearing    [ ] DA Assignment    [ ] Trial P
4. [ ] In Jail    [ ] Not In Jail

**OFFICER(S) MUST BRING**   [ ] All Police Reports, Handwritten Original Reports & Notes   [ ] Evidence (Voucher Nos.): ___   [ ] All Memo Books & Notebooks relate
[ ] Other Message:

**OFFICER INFORMATION**
Date Needed 4/15/17   Time 10 am
Fell (if court): ___ Report to Room 153 on Crim. CL Bldg.
198 E. 161st St.

FOR ACU USE ONLY - Please Print Using Ballpoint Pen

| Rank | Name | Shield/Tax (leg | Command | Date/Time of ACU Notification to Precinct/Command | Name of Person at ACU Making Notification to Precinct/Command | Name of Person at Precinct/Command Accepting Notification from ACU | P.O. will appear Yes/No | Reason |
|------|------|-----------------|---------|---------------------------------------------------|--------------------------------------------------------------|-------------------------------------------------------------------|-------------------------|--------|
| PO | Michele Fernando | | 48PB BX | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

PD 468-122 (Rev. 11-01)-Pent

RANK _____ NAME _____ SHIELD _____ SQUAD _____

PO Hernandez M. _____ 23B54

APPEAR AT _____ HOURS/ON THE _____ YOU ARE HEREBY NOTIFIED TO _____ IN THE FOLLOWING PLACE

13 APR 2017

| CRIMINAL COURT PART | | GRAND JURY |
|---|---|---|
| ☐ % | | ☑ #43627/2016 |
| ADMIN. ADJ. BUREAU | | CIVILIAN COMPLAINT REVIEW BOARD |
| ☐ % | | ☐ % |
| PARK/ VIO. BUREAU | | OTHER |
| ☐ % | | ☐ % |

☐ OUTDOOR RANGE    ☐ INDOOR RANGE    ☐ POLICE ACADEMY    ☐ AREA HQTS.

LOCATED AT 122 E. 161 St. Rm. 633.

NOTIFIED BY _____ TIME _____ DATE _____ SIGNATURE OF MEMBER OF THE SERVICE

4/3/17 PO Hernandez

WILL THIS NOTIFICATION RESULT IN THE OFFICER PERFORMING ANY OVERTIME    ☐ NO    ☐ YES

☐ RDO    ☐ CHANGE OF TOUR    ☐ EXCUSAL DAY. IF OTHER, EXPLAIN:

ORIGINAL - M.O.S.          COPY - M.O.S. SIGN AND RETURN TO ROLL CALL

████████████████████████████

**NOTIFICATION**
PD 406-122 (Rev. 11-01)-Pent     *Tax #* ████████

RANK NAME *Po Hernandez M.*     SHIELD *4826*     SQUAD

YOU ARE HEREBY NOTIFIED TO
APPEAR *PO* HOURS ON DATE *25 APR 2017*     IN THE FOLLOWING PLACE *Bronx*

| CRIMINAL COURT PART | | GRAND JURY |
|---|---|---|
| ☐ % | | ☐ % |

| ADMIN. ADJ. BUREAU | | CIVILIAN COMPLAINT REVIEW BOARD |
|---|---|---|
| ☐ % | *Must Appear* | ☐ % |

| FAM. VIO. BUREAU | | OTHER |
|---|---|---|
| ☐ % | | *CO # 43627 / 2016* |

☐ OUTDOOR RANGE   ☐ INDOOR RANGE   ☐ POLICE ACADEMY   ☐ AREA HQTS.

LOCATION *198 E 161 St, 6th Flr.*

NOTIFIED BY: ████████████   TIME   DATE *1/25/17*   SIGNATURE OF MEMBER OF THE SERVICE *P.O. Hernandez, M.*

( WILL THIS NOTIFICATION RESULT IN THE OFFICER PERFORMING ANY OVERTIME   ☐ NO   ☐ YES )
☐ RDO   ☐ CHANGE OF TOUR   ☐ EXCUSAL DAY, IF OTHER, EXPLAIN:

ORIGINAL - M.O.S.          COPY - M.O.S. SIGN AND RETURN TO ROLL CALL