UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELE HERNANDEZ,

Plaintiff,

-against-

THE CITY OF NEW YORK, ET AL,

Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Danielle M. Dandrige*
*Tel:  (212) 356-0889*
*Matter No. 2017-005566*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................. 2

ARGUMENT...................................................................................................... 6

       STANDARD ON A MOTION TO DISMISS ........................................... 6

     POINT I .................................................................................................... 7

       PLAINTIFF'S CLAIM BROUGHT PURSUANT
       TO § 1983, THE SHRL AND THE CHRL ARE
       TIME-BARRED TO THE EXTENT THEY PRE-
       DATE DECEMBER 14, 2013 ................................................................ 7

     POINT II ................................................................................................... 8

       PLAINTIFF'S CLAIMS OF FIRST
       AMENDMENT RETALIATION FAIL ..................................................... 8

       A.  Plaintiff's Passive Rejection of Performance
       Goals .................................................................................................... 8

       B.   Plaintiff's Reporting of Official Misconduct .................................... 11

     POINT III.................................................................................................. 14

       THE § 1983 CLAIMS AGAINST THE
       INDIVIDUAL DEFENDANTS SHOULD BE
       DISMISSED ........................................................................................ 14

       A.  Lack of Personal Involvement .......................................................... 14

       B.   Qualified Immunity ....................................................................... 16

     POINT IV.................................................................................................. 19

       PLAINTIFF'S CLAIMS OF GENDER
       DISCRIMINATION FAIL ..................................................................... 19

       A.  The Complaint Fails to Plead an Adverse
       Employment Acton ............................................................................. 20

   B. The Complaint Fails to Plead an Inference of
   Discrimination ............................................................................................ 21

POINT V ........................................................................................................... 22

   PLAINTIFF CANNNOT ESTABLISH A CLAIMS
   OF HOSTILE WORK ENVIRONMENT ............................................... 22

POINT VI............................................................................................................ 23

   PLAINTIFF'S CLAIMS OF RETALIATION FAIL................................ 23

POINT VII .......................................................................................................... 24

   PLAINTIFF'S MONELL CLAIMS SHOULD BE
   DISMISSED ............................................................................................ 24

CONCLUSION.................................................................................................... 26

**Cases**                                                                                         **Pages**

Alfaro Motors Inc. v. Ward,
    814 F.2d 883 (2d Cir. 1987).................................................................................14

Al-Jundi v. Estate of Rockefeller,
    885 F.2d 1060 (2d Cir. 1989)..............................................................................14

Anderson v. Recore
    317 F.3d 194 (2d Cir. 2003)................................................................................17

Ashcroft v. Iqbal ,
    556 U.S. 662 (2009)..............................................................................6, 7, 14, 19

Barounis . New York City Police Dep't.,
    2012 U.S. Dist. LEXIS 176477 (S.D.N.Y. Dec. 12, 2012) ............................21, 23

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007).........................................................................6, 7, 10, 15

Benvenisti v. City of New York,
    2006 U.S. Dist. LEXIS 73373 (S.D.N.Y. Sept. 23, 2006)......................................9

Bermudez v. City of New York,
    783 F.Supp.2d 560 (S.D.N.Y. 2011)..........................................................19, 20, 23

Birch v. City of New York,
    184 F.Supp.3d 21 (E.D.N.Y. 2016) ......................................................................19

Birch v. City of New York,
    2017 U.S. App. LEXIS 739 (2d Cir. Jan. 12, 2017) .......................................11, 19

Bowen-Hooks v. City of New York,
    13 F.Supp.3d 179 (E.D.N.Y. 2014) ......................................................................20

Carpenter v. City of Mt. Vernon.,
    198 F.Supp.3d 272 (S.D.N.Y. 2016) ....................................................................20

Caruso v. City of New York,
    973 F.Supp.2d 430 (S.D.N.Y. 2013) ....................................................................11

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002)...................................................................................7

City of Okla. v. Tuttle,
    471 U.S. 808 (1985) .............................................................................................25

Coggins v. Buonora,
   776 F.3d 108 (2d Cir. 2015)...................................................................................16

DiFolco v. MSNBC Cable, L.L.C.,
   2622 F.3d 104 (2d Cir. 2010) .................................................................................7

Dillon v. Morano,
   497 F.3d 247 (2d Cir. 2007) .................................................................................11

Farid v. Ellen,
   593 F.3d 233 (2d Cir. 2010).................................................................................14

Garcetti v. Ceballos,
   547 U.S. 410 (2006)................................................................................................9

Galabya v. N.Y. City Bd. of Educ.,
   202 F.3d 636 (2d Cir. 2000).................................................................................20

Genova v. City of Glen Cove,
   2017 U.S. Dist. LEXIS 25730 (E.D.N.Y. Feb. 22, 2017).......................................12

Goodine v. Suffolk Cty. Water Auth.,
   2016 U.S. Dist. LEXIS 739 (E.D.N.Y. Jan. 29, 2016) ..........................................25

Goonewardena v. New York State Workers' Comp. Bd.,
   2016 U.S. Dist. LEXIS 16552 (S.D.N.Y. Feb.9, 2016)....................................23, 24

Grullon v. City of New Haven,
   720 F.3d 133 (2d. Cir. 2013).................................................................................15

Guity v. Uniondale Free Sch. Dist.,
   2017 U.S. Dist. LEXIS 27542 (E.D.N.Y.  Feb.23, 2017)....................................22, 23, 24, 25

Hasper v. Cty. of Suffolk,
   2015 U.S. Dist. LEXIS 22689 (E.D.N.Y.  Feb. 25, 2015)......................................12

Kassner v. 2nd Ave. Delicatessen, Inc.,
   496 F.3d 229 (2d Cir. 2006)...................................................................................8

Matthews v. City of New York,
   2012 U.S.Dist. LEXIS 53213 (S.D.N.Y Apr. 12, 2012).........................................18

Matthews v. City of New York,
   488 Fed. Appx. 532 (2d Cir. 2012).......................................................................18

Matthews v. City of New York,
   957 F.Supp.2d 442 (S.D.N.Y. 2013).....................................................................18

Matthews v. City of New York,
    779 F.3d 167 (2d Cir. 2015).................................................................................9, 18

Monell v Dep't. of Soc. Servs.,
    436 U.S. 659 (1978)..........................................................................................24

Moore v. City of New York.
    2017 U.S. Dist. LEXIS 379 (S.D.N.Y. Jan. 3, 2017)........................................20, 22

Moore v. Verizon,
    2016 U.S. Dist. LEXIS 16201 (S.D.N.Y. Feb. 5, 2016)........................................22

Mullenix v. Luna
    136 S.Ct. 305 (2015)..........................................................................................17

Nassau Cty. Employee "L" v. Cty of Nassau,
    2004 F.Supp.2d. 293 (E.D.N.Y. 2004) ..................................................................25

Nonennman v. City of New York,
    2004 U.S. Dist. LEXIS 8966  (S.D.N.Y. May 20, 2004).......................................13

Nguedi v. FRB of New York,
    2017 U.S. Dist.. LEXIS 89848 (S.D.N.Y. June 11, 2017)......................................22

Okin v. Vill. of Cornwal-on-Hudson Police Dep't.,
    577 F.3d 415  (2d Cir. 2009)..............................................................................17

Olivio v. City of New York,
    2015 U.S. Dist. LEXIS 101957 (E.D.N.Y. Aug. 4, 2015)......................................15

Pisano v. Mancone,
    2011 U.S. Dist. LEXIS 28864 (S.D.N.Y. Mar. 21, 2011)......................................9

Raffaele v. City of New York,
    2015 U.S. Dist. LEXIS 148488 (E.D.N.Y. Oct. 30, 2015)......................................14

Riechle v. Howards
    566 U.S. 658 (2012)..........................................................................................17

Rivers v. N.Y. City Hous. Auth.,
    176 F.Supp.2d 229 (S.D.N.Y. 2016).................................................................10, 11

Ruiz v. City of New York,
    2015 U.S. Dist. LEXIS 117947 (S.D.N.Y. Sept. 2, 2015)......................................21

Salim v. Proulx,
    93 F.3d 86 (2d Cir. 1996)..................................................................................16

Schultz v. Inc. Vill. Of Bellport,
    479 Fed. Appx. 358 (2d Cir. 2012) ........................................................................25

Smith v. Cty. of Suffokk,
    776 F.3d 114 (2d Cir. 2015) .................................................................................8

Stembridge v. New York City Dep't. of Educ.,
    622 Fed. Appx. 6 (2d Cir. 2015) ...........................................................................8

Terebesi v. TorresoU,
    764 F.3d 217 (2d Cir. 2014) ................................................................................17

Vega v. Hempstead Union Free Sch. Dist.,
    801 F. 3d 72 (2d Cir. 2015) ...............................................................................8, 23

White v. Pauly,
    137 S.Ct. 548 (2017) .................................................................................16, 17, 19

Wray v. City of New York,
    490 F.2d 189 (2d Cir. 2007) ...............................................................................25

Zelnick v. Fashion Inst. of Tech.,
    464 F.3d 217 (2d Cir. 2006) ...............................................................................10

**Statutes**

42 U.S.C. §1983 ................................................................1, 2, 8, 14, ,19, 22, 23, 24, 25

New York State Executive Law § 296……............................................1, 8, 19, 22, 23

New York City Administrative Code § 8-107…… ..................................1, 8, 19, 21, 22

**Other Authorities**

Federal Rules of Civil Procedure Rule 12…………………………………………....……… 2, 7

## PRELIMINARY STATEMENT

Plaintiff Michele Hernandez, a police officer in the New York City Police Department ("NYPD"), brings this action pursuant to 42 U.S.C. § 1983 ("§ 1983"), New York State Executive Law § 296 ("'SHRL"), and New York City Administrative Code § 8-107 ("CHRL") against the City of New York ("City"); James P. O'Neill, NYPD Commissioner; William J. Bratton, former NYPD Commissioner; Raymond W. Kelly, former NYPD Commissioner; NYPD Deputy Chief Kevin Catalina; NYPD Deputy Inspector Keith Walton; City Councilmember Vanessa L. Gibson; Bronx County District Attorney Darcel D. Clark; Wanda Perez-Maldonado, Chief of the Public Integrity Bureau of the Bronx County District Attorney's Office ("BCDA"); Omer Wiczyk, Deputy Chief of the Public Integrity Bureau of the BCDA; and Katherine J. Hwang, Special Assistant District Attorney for the BCDA.

The amended complaint does not articulate plaintiff's claims with any clarity, but it appears that she is claiming as follows: 1) that defendants retaliated against her for exercising her First Amendment right to free speech by giving her unfair assignments, subjecting her to discipline, and requiring her to report for interviews with BCDA employees; 2) that defendants City and Walton discriminated her against on the basis of her gender in violation of the Equal Protection Clause of the Fourteenth Amendment, the SHRL, and the CHRL by subjecting her to unfair assignments, discipline, yelling at her, and accusing her of misconduct; 3) that defendants City and Walton, also in violation of the Equal Protection Clause of the Fourteenth Amendment, the SHRL and the CHRL, subjected plaintiff to a hostile work environment on the basis of her gender; 4) that defendant Walton retaliated against plaintiff for filing a Notice of Claim; 5) that defendant City deprived her of her First Amendment right to freedom of speech and her right to Equal Protection under the Fourteenth Amendment through their "official and unofficial policies" of gender discrimination, retaliation and system of "performance goals"; and 6) that

defendant City violated § 1983 through its negligent hiring and its failure to train, supervise, and discipline the individually named defendants. As set forth more fully below, plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS[1]

Plaintiff is a 15-year veteran police officer with the NYPD. See Complaint at ¶ 2. Plaintiff alleges that since March 2003 defendants City, NYPD Commissioner O'Neill, former NYPD Commissioners Bratton and Kelly, Deputy Chief Catalina and Deputy Inspector Walton as well as unidentified employees of the 44th and 49th Precincts have implemented a system of "performance goals" for arrests, summonses and stop-and-frisks, which disproportionally effect people of color. See id at ¶¶ 5, 42. Plaintiff claims that since March 2003 she and other officers assigned to work in Bronx County have been pressured to meet these "performance goals." See id. at ¶¶ 47-48. Plaintiff alleges that at unspecified times between March 2003 and December 2013 she challenged the implementation of the "performance goals' and that as a result of her passive rejection of the "performance goals" she received unfair assignments, less than positive annual reviews, and unidentified discipline from defendant Catalina. See id. at ¶¶46, 60. As a result, in December 2013, plaintiff requested a transfer from the 44th Precinct. See id. at ¶¶ 60. The transfer request was granted in or about December 2014 when plaintiff transferred to the 49th Precinct. See id. ¶¶ 26, 84-90.

Prior to her transfer to the 49th Precinct, on March 11, 2014, plaintiff initiated a car stop of defendant Gibson for allegedly talking on her cell phone without a hands-free device. See id. at ¶ 62. During the stop, plaintiff alleges that defendant Gibson called defendant Catalina and

---

[1] For the purposes of this motion only, the well-pleaded allegations of fact in the complaint are deemed to be true.

shortly thereafter plaintiff received multiple radio requests to contact her command. See id. at ¶ 63-64. Plaintiff contacted the 44th Precinct and spoke with Desk Officer Lieutenant Eason who allegedly requested that plaintiff refrain from issuing a summons to defendant Gibson. See id. at ¶ 65. After ending her conversation with Lt. Eason, plaintiff alleges that she approached defendant Gibson and asked if defendant Gibson was speaking to defendant Catalina. Defendant Gibson replied in the affirmative and then handed plaintiff her cell phone. Plaintiff alleges that defendant Catalina also requested that she not issue defendant Gibson a summons because defendant Gibson met monthly with the Mayor and the police commissioner. See id at ¶¶ 66-69.

Plaintiff did as requested and then the following day, at defendant's Catalina's direction, met with a Training Sergeant to void the partially completed summonses. The sergeant directed plaintiff to enter in an incorrect penal code section and prepare a Summons Voidance Form. See id. at ¶¶ 71-77. Again, plaintiff did as directed but claims that she maintained a copy of the original summonses, which demonstrated that it had been originally written for improper phone use. See id. 80; Ex. 1[2]. Plaintiff, however, did not report what she believed to be a criminal transaction and evidence of a conflict of interest by defendants Catalina and Gibson to the NYPD's Internal Affairs Bureau ("IAB") or the City's Conflict of Interest Board as was required of her by NYPD Patrol Guide Procedure Nos. 205-38, 207-21 and 207-22. See id. at ¶ 81. Plaintiff claims that several months after the March 2014 car stop she transferred to the 49th Precinct. See id. at ¶ 84.

While at the 49th Precinct, plaintiff alleges that she observed the personnel at the precinct meet "performance goals," a practice which plaintiff once again passively rejected. As a result

---

[2] Unless otherwise noted, all exhibits referenced herein are annexed to the Amended Complaint (Dkt. No. 36).

of her passive rejection of the quota system, and because of defendant's Walton's purported friendship with defendants Catalina and Walton, plaintiff claims that defendant Walton gave her unfair assignments and discipline from December 2014 to August 11, 2016. See id. at ¶ 89.

In July 2016, plaintiff alleges that defendant Walton, as a favor to defendants Gibson and Catalina, falsely accused her of misconduct arising from an incident that took place in a Chase bank. According to plaintiff, following the undescribed event at the Chase bank, defendant Walton acted in a threatening manner by ordering her to remove her gun belt and hand it him, which he subsequently placed on the floor of his office. Plaintiff asserts that as further favor to defendants Catalina and Gibson, defendant Walton accused plaintiff of being "unstable" and directed other officers to interview the Chase bank employees, presumably about plaintiff. Plaintiff claims that notwithstanding the bank manager's statements that plaintiff acted professionally, defendant Walton reported to IAB that plaintiff had engaged in misconduct. See id. at ¶¶ 94-101.

Thereafter, on August 11, 2016, plaintiff filed a Notice of Claim with the New York City Comptroller's office wherein she allegedly complained that her civil rights had been violated. See id. at ¶ 103; Ex. A to the Dandrige Decl. The day after she filed her Notice of Claim, plaintiff was transferred to the Legal Bureau. Then on August 15, 2016, plaintiff claims that she reported her unidentified legal claims and the alleged public corruption by City and BCDA employees to the New York Daily News. That same day, plaintiff was transferred to the Firearm Suppression Section of the Bronx Narcotics Division. See id. at ¶¶ 104-107.

Subsequently, on September 16, 2016, plaintiff alleges that the NYPD sent her to performance monitoring although she claims she had no performance issues. See id. at ¶ 113. Shortly thereafter, IAB interviewed plaintiff regarding defendant Walton's July 2016 allegations

of misconduct. During the interview, plaintiff claims that she informed IAB about the March 2014 "ticket-fixing" incident with defendants Catalina and Gibson and accused defendant Walton of misconduct. <u>See</u> id. at ¶¶ 114, 116 and 118. On October 14, 2016, plaintiff was subsequently transferred to the Detective Borough Bronx. Then, on November 8, 2016, she was transferred back to the 49th Precinct. <u>See</u> id. at ¶¶ 120-121.

Plaintiff alleges that upon her return to the 49th Precinct, defendant Walton continued to perform favors for defendants Gibson and Catalina and accordingly assigned her to the late tour. <u>See</u> id. at ¶ 122. Then four days after defendant Walton assigned her to the late tour, on November 19, 2016, plaintiff was transferred back to the Detective Borough Bronx. Plaintiff then filed the instant lawsuit on December 14, 2016 against defendants City, O'Neill, Bratton, Kelly, Catalina, Walton and Gibson. <u>See</u> id. at ¶¶124-125.

Plaintiff claims that following the filing of her original complaint in this action, as a favor to defendant Gibson, Bronx County District Attorney Clark directed her staff to open a criminal inquiry into plaintiff stemming from plaintiff's March 2014 voidance of defendant Gibson's summons. <u>See</u> id. at ¶ 126-127. As part of the criminal inquiry, plaintiff claims that defendants Perez-Maldonado, Wiczyk, and Hwang informed plaintiff's PBA counsel, but not her private counsel, that she was the subject of a criminal investigation. Plaintiff contacted the BCDA and informed defendants Perez-Maldonado, Wiczyk, and Hwang that she was represented by private counsel for all matters related to her allegations of public corruption. <u>See</u> id. at ¶¶ 130-132. The NYPD, however, ordered plaintiff to appear for Grand Jury on April 3, April 12, and April 13, 2017[3] without disclosing information about the appearances to plaintiff or her private counsel. <u>See</u> id. at ¶¶ 134-142. On April 25, 2017, plaintiff was again notified to appear for

_____

[3] There is no indication on either the April 3 or April 12, 2017 Court Assignment Request that plaintiff was notified to appear for Grand Jury. <u>See</u> Ex. 7.

Grand Jury without defendants Perez-Maldonado, Wiczyk, or Hwang informing her or her private counsel about the reason for the appearance. Nonetheless, plaintiff appeared at the BCDA, with her private counsel. Plaintiff claims that she appeared at the BCDA because she had been ordered to do so and feared suspension if she failed to do so. See id. at ¶¶ 143-148. Indeed, plaintiff was notified to appear at the BCDA through her employer as a "Must Appear." See Ex. 7. During the interview, plaintiff was questioned by defendants Wiczyk and Hwang about the March 2014 "ticket-fixing" incident and was informed that she was being questioned as a witness to a possible criminal matter. See id. at ¶¶ 150-154.

## ARGUMENT

### Standard on a Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, plaintiff must plead facts adequate "to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In Iqbal, the Supreme Court explained the plausibility standard by stating that, where a complaint pleads facts that are merely consistent with a defendant's liability "without some further factual enhancement[,] it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 697, quoting, Twombly, 550 U.S. at 557). That is, the facts set forth in the complaint "must be enough to raise a right to relief above the speculative level," and a party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted). A complaint fails to state a claim "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Iqbal, 555 U.S. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id., quoting, Twombly, 550 U.S. at 557. Determining plausibility is a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." Id. "Unless a plaintiff's well-pleaded allegations of fact have 'nudged [his] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed.'" In applying this standard, the Court accepts as true all well-pleaded factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements for a cause of action." Iqbal, 556 U.S. at 662, citing, Twombly, 550 U.S. at 555). Although the Court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id.

In considering a motion to dismiss under Rule 12(b)(6), the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable, L.L.C., 622 F.3d 104, 111 (2d Cir. 2010), citing, Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). "Where a document is not incorporated by reference, the Court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint." DiFolco, 622 F.3d at 111(citations and internal quotations omitted). Here, defendants have included plaintiff's August 11, 2016 Notice of Claim as plaintiff appears to claim that her filing the Notice of Claim constituted protected activity. This document is incorporated by reference as plaintiff specifically mentions it and its purported contents in her complaint, and is, in any event, unquestionably integral to the complaint.

## POINT I

### PLAINTIFF'S CLAIMS BROUGHT PURSUANT TO § 1983, THE SHRL AND THE CHRL ARE TIME-BARRED TO THE EXTENT THEY PRE-DATE DECEMBER 14, 2013

Plaintiff brings her claims of discrimination and retaliation pursuant to 42 U.S.C. § 1983, the SHRL and the CHRL. See Amended Complaint at pp. 22-31. Claims brought under § 1983, the SHRL and the CHRL must be commenced within three years. Thus, any claims accruing before December 14, 2013[4] are time-barred and must be dismissed. See Stembridge v. New York City Dep't. of Educ., 622 Fed. Appx. 6, 7 (2d Cir. 2015); Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 79 (2d Cir. 2015); See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 238 (2d Cir. 2006).

## POINT II

### PLAINTIFF'S CLAIMS OF FIRST AMENDMENT RETALIATION FAIL

**A. Plaintiff's Passive Rejection of Performance Goals**

To plead a claim of retaliation under the First Amendment, plaintiff must allege that 1) she engaged in activity protected by the First Amendment; 2) that she suffered an adverse employment action; and 3) that there is a causal connection between plaintiff's protected speech and the adverse employment action(s). See Smith v. Cty. of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015). Here, plaintiff claims that at unidentified times between March 2003 and August 11, 2016 she was subjected to unfair assignments and unspecified discipline for passively rejecting the NYPD's quota system. Given the paucity of facts alleged, plaintiff's claim of First Amendment retaliation must fail because she cannot demonstrate that she: a) engaged in protected activity; b) suffered an adverse employment action; or c) establish a causal connection between her purported protected speech and the actions of which she complains.

First, to establish that a public employee's speech is protected under the First Amendment, a plaintiff must satisfy two requirements: 1) that the employee spoke as a citizen,

---

[4] Plaintiff filed her original complaint on December 14, 2016. (Dkt. No. 1)

and 2) that the employee spoke on a matter of public concern.   If the employee cannot demonstrate both factors, then the First Amendment claim fails.  See Garcetti v Ceballos, 547 U.S. 410, 418 (2006).   In Garcetti, the Supreme Court held that a public employee, speaking pursuant to his or her official duties, does not speak as a citizen and therefore the speech is not shielded from employer discipline.   See id. at 421-422.  The threshold inquiry, then, is whether the employee is speaking as a citizen. If it is determined that the employee is not speaking as a citizen, it is not then necessary to reach the question of whether the speech involves matters of public concern. See Benvenisti v. City of New York, No. 04 Civ. 3166 (JGK), 2006 U.S. Dist. LEXIS 73373 at *23-24 (S.D.N.Y. Sept. 23, 2006).

The Garcetti court, however, did not set forth any specific criteria for determining when speech is made pursuant to an employee's official duties other than noting that the inquiry is a practical one and can be informed, but not necessarily dictated, by formal job descriptions. See id. at 424-425.  Since Garcetti, courts have relied on the following pertinent factors determining whether the public employee was speaking pursuant to his or her official duties: 1) was the speech made as part of the ordinary scope of the employee's job duties; 2) was speech made in a public forum or limited to internal channels; and 3) is there a civilian analogue to the speech. See Matthews v. City of New York, 779 F.3d 167, 174-175 (2d Cir. 2015).

Upon establishing that plaintiff spoke as a private citizen, the inquiry then turns to whether plaintiff's speech was protected.  In order to make this determination, a court must look to the "content, form and context of a given statement."   Speech is considered protected when it relates to matters of political, social or other community concerns.  See Pisano v. Mancone, No. 08 Civ. 1045, 2011 U.S. Dist. LEXIS 28864 at *29 (S.D.N.Y. Mar. 21, 2011).

Inherently fatal to plaintiff's amended complaint is her failure to identify the content, form or context of her speech. Plaintiff offers no factual allegations showing that she spoke at all, thus making it impossible to determine if plaintiff was speaking either as a citizen or about matters of public concern. Plaintiff repeatedly states that she passively rejected the NYPD's alleged performance goals, but fails to state the nature of her passive rejection, the content of her passive rejection, the timing of her passive rejection or to whom the passive rejection was communicated. Given the minimal facts in the complaint, at best that defendants can discern is that plaintiff's passive rejection entailed not making arrests or issuing tickets for which she was disciplined. In short, the facts, as alleged, simply suggest that plaintiff was disciplined for not doing her job. There is no fact alleged that remotely establishes that plaintiff actually engaged in protected First Amendment activity, much less that she was disciplined as a result of that activity. Plaintiff sets forth allegations that are at best speculative. See Twombly, 550 U.S. at 555 ("[F]actual allegations must be enough to raise a right of relief above the speculative level.")

In that vein, plaintiff does not set forth any facts to suggest that she suffered an adverse employment action. In the context of a First Amendment retaliation claim, an adverse action constitutes any "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights..." Rivers v. New York City Hous. Auth., 176 F.Supp.3d 229, 244 (S.D.N.Y. 2016), quoting, Zelnick v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006). Thus, an adverse employment action can be a tangible action such as termination, demotion, or reduction in pay or it can be lesser actions that when viewed collectively suggest a campaign of harassment. See id. Here, plaintiff conclusorily states that she was subjected to unfair assignments and discipline but fails to describe the nature of the discipline or to provide any facts suggesting that the assignments were disproportionate to those

given to other similarly situated police officers.  See id. at 255 (an increased workload can be an adverse employment action when plaintiff alleges facts to suggest that the increase was grossly disproportionate to that given to similarly situated employees); see also Dillon v. Morano, 497 F.3d 247, 254-5 (2d Cir. 2007)(reassignment to a less prestigious unit, assignment of menial tasks, and an altered unsigned performance evaluation not adverse employment actions where no evidence that plaintiff was disadvantaged in any way).  Plaintiff's allegations are so vague that is not plausible to infer that a similarly situated person of ordinary firmness would be deterred from engaging in protected speech.

Finally, plaintiff's First Amendment claim regarding her passive rejection of the performance goals also fails because she cannot establish any causal connection between her alleged protected speech and any employer-related discipline.  A plaintiff can establish causation by setting forth facts demonstrating direct evidence of retaliatory evidence or facts suggesting an inference of temporal proximity.  See Birch v. City of New York, 2017 U.S. App. LEXIS 739 at *3-4 (2d Cir. Jan. 12, 2017); Caruso v. City of New York, 973 F.Supp.2d 430, 453-4 (S.D.N.Y. 2013).  Here, plaintiff fails to set forth any facts demonstrating direct evidence of retaliation.  Indeed, plaintiff does not even set forth facts suggesting that her supervisors knew of her protected speech much less acknowledged it. Plaintiff also does not state with any particularity when she engaged in the alleged protected speech thus making it impossible to determine if there is any temporal proximity between her speech and the alleged unfair assignments and discipline.  Thus, for these reasons, plaintiff's claim of First Amendment retaliation regarding her passive rejection of the performance goals warrants dismissal.

**B.  Plaintiff's Reporting of "Official Misconduct."**

Assuming for the purposes of this motion to dismiss that plaintiff engaged in protected speech when she complained of official misconduct[5], plaintiff's First Amendment claim must still fail because the amended complaint contains no allegation that she was subjected to an adverse employment action. Following her protected activity, plaintiff alleges that she was subject to transfers, one incident of performance-monitoring and an interview with the BCDA's Public Integrity Bureau. See Am. Compl. at ¶¶ 106-107, 113, 120-121, and 147. None of these actions, even when viewed collectively, would inhibit a person of ordinary firmness from engaging in protected activity. Plaintiff's own allegations underscore that fact. According to plaintiff's chronology, she publicly complained to the press about defendant Catalina's and Gibson's[6] alleged misconduct and thereafter she was transferred to the Firearms Suppression section of the Detective Borough Bronx. Plaintiff, however, fails to allege how this transfer in any manner disadvantaged her or was in any manner punitive. See Genova v. City of Glen Cove, No. 13 CV 4088 (JMA)(SIL), 2017 U.S. Dist. LEXIS 25730 at *44-47 (E.D.N.Y. Feb. 22, 2017). Plaintiff claims that a month later she was placed on performance monitoring but does not allege that any tangible adverse action followed the monitoring and how the monitoring in itself chilled her speech. Plaintiff also does not allege that the performance monitoring occurred more than once. See id. at 38 ("…if the conduct at issue is minor and is isolated or infrequent it will not meet the necessary "critical mass" threshold."); Hasper v. Cty. of Suffolk, No. 11 CV 3227 (JS)(AKT), 2015 U.S. Dist. LEXIS 22689 at *11-12 (E.D.N.Y. Feb. 25, 2015)(initiation of misconduct charges, alone, do not constitute an adverse employment action).

---

[5] Plaintiff alleges she complained of official misconduct to the New York Daily News on August 15, 2016, to IAB in September 2016, and again in her federal lawsuit on December 14, 2016. See Am. Compl. at ¶¶ 105, 113-116, and 125.

[6] Plaintiff's alleges that she also complained about official misconduct by BCDA officials but that is not reflected in either the newspaper articles that plaintiff attaches to the Amended Complaint or in the allegations of her December 14, 2016 complaint.

Clearly, those actions had no chilling effect on plaintiff because she later complained about the alleged official misconduct to IAB shortly *after* being placed on performance monitoring. After this second complaint of official misconduct, plaintiff claims she was transferred back to the Detective Borough Bronx and then to the 49th Precinct. Again, plaintiff does not assert that these transfers negatively affected in her any way. In fact, she does not even claim that the transfers were because of her speech. And the transfers certainly did not inhibit plaintiff's exercise of her ability to speak out because following the transfers she filed her federal lawsuit on December 14, 2016 wherein she asserts that both defendants Catalina and Gibson engaged in ticket-fixing.

Following this third complaint of official misconduct, plaintiff claims that she was ordered to attend an interview with the BCDA's Public Integrity Bureau without being told why. She further complains that her private counsel was also not notified. Plaintiff then describes the interview as "testy" and perplexingly asserts that because of the testy nature of the interview it was somehow retaliatory. Plaintiff, however, admits that during the interview she was informed that she was being questioned as a possible witness to criminal activity. Beyond plaintiff's conclusory assertion that the interview was "testy" and thus somehow retaliatory, she sets forth no facts plausibly suggesting that the interview in any way disadvantaged or negatively affected her employment or even functioned as more than a mere inconvenience her. It is not plausible to believe that a person of ordinary firmness – and a veteran NYPD officer - would be chilled upon being interviewed by a prosecuting entity about an alleged crime that he or she reported about on three different occasions. See Nonnenman v. City of New York, No. 02 CV 10131 (JSR)(AJP), 2004 U.S. Dist. LEXIS 8966 at *65-7 (S.D.N.Y. May 20, 2004) (Departmental interviews of plaintiff about his complaint of official misconduct not an adverse employment

action.) As plaintiff cannot establish that she suffered from an adverse employment action following her complaints of official misconduct, her First Amendment claim should be dismissed.

**POINT III**

**THE § 1983 CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED**_____

**A.  Lack of Personal Involvement**

"It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010).  A pleading that is "entirely devoid of any allegations of…personal involvement" is "fatally defective on its face."  Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987)(internal quotation marks omitted).  Furthermore, "[c]onclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient" to state a claim.  Raffaele v. City of New York, No. 13 CV 4607 (KAM)(VVP), 2015 U.S. Dist. LEXIS 148488 at *27 (E.D.N.Y. Oct. 30, 2015).  Plaintiff's Amended Complaint falls well short of sufficiently alleging that individually named defendants O'Neill, Bratton, Kelly, Gibson, Clark, Perez-Maldonado, Wiczyk or Hwang were personally involved in the alleged violation of plaintiff's First Amendment rights.

The Amended Complaint does not allege that Commissioner O'Neill and former Commissioners Bratton and Kelly were in any way involved in the alleged events giving rise to plaintiff's First Amendment claim.  The mere fact that these defendants are "in a high position of authority is an insufficient basis for the imposition of personal liability."  Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989); see also Iqbal, 556 U.S. at 676.

The Amended Complaint does allege that Commissioner O'Neill and former Commissioners Bratton and Kelly "refuse to admit illegal performance goals exist continuing [sic] to implement them throughout every precinct, transit district and police service area across the city." Am. Compl. at ¶ 44. But this is precisely the type of "'naked assertion[]' devoid of 'further factual enhancement'" that is insufficient to state a plausible claim. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Plaintiff fails to allege any facts demonstrating that an agency-wide policy exists regarding these "performance goals" *and* that the individual defendants specifically "implemented" this policy. See Olivo v. City of New York, No. 14 CV 4966 (ERK), 2015 U.S. Dist. LEXIS 101957 at *7 (E.D.N.Y. Aug. 4, 2015)(conclusory allegations that constitutional violations "were committed as a result of policies and customs of the City, its Mayor, Michael Bloomberg, its Police Department, the NYPD, and Police Commissioner Raymond Kelly" failed to sufficiently allege personal involvement).

Similarly, plaintiff fails to allege that defendant Gibson had any personal involvement in plaintiff's constitutional deprivations. Plaintiff may demonstrate personal involvement by showing that the individual defendant: 1) directly participated in the alleged constitutional violation; 2) failed to remedy the violation after being informed about it through a report or appeal; 3) created a policy or custom under which the constitutional violation occurred; and 4) was grossly negligent in supervising subordinates who committed the violations. See Grullon v. City of New Haven, 720 F.3d 133, 138-139 (2d Cir. 2013)(internal citations omitted). Plaintiff does not allege that defendant Gibson directly participated in any retaliatory act; that defendant Gibson created a policy or custom allowing "performance goals" or public corruption; that she failed to remedy any such wrong upon being informed of the alleged violations or impermissible practices; or that she had any supervisory authority over the individuals who committed the

wrongful acts, much less was grossly negligent in supervising them. Indeed, the only assertion that plaintiff makes with respect to defendant Gibson is that other named defendants performed favors for her. Notably, plaintiff does not allege that defendant Gibson requested, or in any way directed, the alleged favors. She also does not set forth any facts establishing that as a Councilmember Gibson has any supervisory authority within the NYPD such that she could affect plaintiff's employment. Indeed, Councilmember Gibson does not work for the NYPD and has no control over plaintiff's employment. As such, plaintiff's claims against defendant Gibson should be dismissed.

The same holds true for plaintiff's claims against the individually named BCDA defendants. Plaintiff asserts that she objected to being interviewed by the BCDA defendants on the ground that she believed the interview to be in retaliation for her report of public corruption, but other than this conclusory assertion plaintiff provides no factual content demonstrating that these individual defendants were personally involved in an actual constitutional deprivation. To the contrary, plaintiff alleges that it was the NYPD that ordered plaintiff to appear for the interview under the threat of suspension. See Am. Compl. at ¶¶ 134, 137, 140, 143, 148. Thus, the only direct involvement alleged is by plaintiff concerns the NYPD, not BCDA defendants. As such, the First Amendment retaliation claims against them should also be dismissed for lack of personal involvement.

**B. Qualified Immunity**

"Qualified immunity protects public officials from civil liability "'if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" Coggins v. Buonora, 776 F.3d 108, 114 (2d Cir. 2015), *quoting* Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996); White v. Pauly,

__U.S.__ 137 S.Ct. 548, 551 (2017). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, __U.S.__, 136 S.Ct. 305, 308 (2015)(per curiam), *quoting* Reichle v. Howards, 566 U.S. 658 (2012)).

To determine a clearly established right, courts consider "the specificity with which the right is defined, the existence of a Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable [official] in light of preexisting law." Terebesi v. Torreso, 764 F.3d 217, 231 (2d. Cir. 2014). Thus, a right is "clearly established" if: 1) the law is defined with reasonable clarity; 2) the Supreme Court or the Second Circuit has recognized that right; and 3) a reasonable defendant would have understood from existing law that his conduct was unlawful. Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003). For the second element, courts "look to Supreme Court and Second Circuit precedent existing at the time of the alleged violation." Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 433 (2d. Cir. 2009) (citation omitted). Even if the Second Circuit "has not explicitly held a course of conduct unconstitutional, [a court] may nonetheless treat the law as clearly established if decisions from this or other circuits 'clearly foreshadow a particular ruling on the issue.'" Terebesi, 964 F.3d at 231 (citation omitted); White, 137 S.Ct. at 551-552 (2017).

The crux of plaintiff's initial First Amendment claim is that she was subjected to retaliatory actions after complaining about purported "performance goals" relating to arrests, summons, and stop-and-frisks. However, prior to February 2015, it was not "clearly established" that such complaints constituted protected speech under Garcetti. In fact, until that date, the case law was in a state of flux.

In Matthews v. City of New York, No. 12 CV 1354 (BSJ), 2012 U.S. Dist. LEXIS 53213 (S.D.N.Y. April 12, 2012), the district court dismissed the First Amendment claim of a police officer who similarly alleged that he was subjected to retaliation after complaining about an "illegal quota system." The court held that the officer's speech was not protected because the officer was speaking pursuant to his official duties as a police officer, and because no comparable civilian analogue existed. Id. at *5-13. The officer appealed the district court's decision dismissing the complaint. In November 2012, the Second Circuit issued a summary order vacating the district court's decision on the grounds that the record was not clear if the manner in which plaintiff voiced his complaints fell within his official duties. Matthews v. City of New York, 488 Fed. Appx. 532, 533 (2d Cir. 2012).

In July 2013, the district court granted the defendants' motion for summary judgment. See Matthews v. City of New York, 957 F. Supp. 2d 442 (S.D.N.Y. 2013). The district court reviewed case law within the Second Circuit that interpreted Garcetti and concluded that the officer's complaints about the alleged quota policy were not protected because they "concerned the subject matter of his employment, owed its existence to his employment, and was made in furtherance of that employment." 957 F.Supp.2d at 462.

The plaintiff appealed again. In February 2015, the Second Circuit vacated the grant of summary judgment. See Matthews v. City of New York, 779 F.3d 167 (2d Cir. 2015). The Circuit held that "when a public employee whose duties do not involve formulating, implementing, or providing feedback on a policy that implicates a matter of public concern engages in speech concerning that policy, and does so in a manner in which ordinary citizens would be expected to engage, he or she speaks as a citizen, not as a public employee." 779 F.3d at 174.

Thus, because it was not beyond debate that plaintiff was engaging in protected speech any time prior to February 2015 when she passively rejected the "performance goals," the individual defendants are entitled to qualified immunity for any conduct that took place prior to February 2015 that was in alleged response to plaintiff's protected speech. See White 137 S.Ct. at 551-2; Birch v. City of New York, 184 F. Supp.3d 21, 29-31 (E.D.N.Y. 2016), *aff'd other grounds*, 2017 U.S. App. LEXIS 739 at *3-4 (2d Cir. Jan. 12, 2017).

**POINT IV**

**PLAINTIFF'S CLAIMS OF GENDER DISCRIMINATION FAIL**

Plaintiff's allegations of gender discrimination must be dismissed because the Amended Complaint does not set forth any facts suggesting that plaintiff was subject to an adverse employment action or that defendants were motivated by discriminatory animus on the basis of gender. Plaintiff's Fourteenth Amendment, SHRL and CHRL claims thus fail. See Iqbal, 556 U.S. at 678.

"The same framework and pleading standard governs" § 1983, SHRL, and CHRL. To establish a claim for gender discrimination, a plaintiff must plead facts to demonstrate that: 1) she is a member of a protected class; 2) was qualified for the position; 3) suffered an adverse employment action; and 4) the action occurred under circumstances giving rise to an inference of discriminatory conduct. See Bermudez v. City of New York, 783 F.Supp.2d 560, 575-7 (S.D.N.Y. 2011).[7] The plaintiff must plausibly allege that 1) the employer took adverse action against her; and 2) that her gender was a motivating factor in the employment decision.

---

[7] The Local Civil Rights Restoration Act's amendments to the CHRL altered the standard by which a court should determine whether a discriminatory act has occurred under the CHRL. The CHRL is to be interpreted more liberally than and analyzed independently from its federal and state counterparts. However, plaintiff must still plead facts demonstrating that she was treated less well because of her

## A. The Complaint Fails to Plead an Adverse Action

An adverse employment action is a "materially adverse change in the terms and conditions of employment," and is something "more disruptive than a mere inconvenience or an alteration of job responsibilities such as a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000); see also Carpenter v. City of Mt. Vernon, 198 F.Supp.3d 272, 279 (S.D.N.Y. 2016); Bowen-Hooks v. City of New York, 13 F.Supp.3d 179, 211 (E.D.N.Y. 2014).

There are no facts in the Amended Complaint to support plaintiff's allegation that she suffered an adverse employment action based on her gender other than the fact that she is female. See Bermudez, 783 F. Supp. at 581. Given that plaintiff only attributes gender-based bias to defendant Walton, it appears that plaintiff is arguing that following alleged events constitute adverse employment actions: 1) unfair assignments; 2) unspecified discipline; 3) a false accusation of misconduct; 4) being cursed at; and 5) a onetime assignment to a late tour. See Am. Compl. ¶¶ 89 94, 100-101, 122. But as explained below, none of these events constitute adverse actions nor do these allegations have any plausible connection to plaintiff's gender.

Plaintiff alleges that she was subject to unfair assignments, discipline and a onetime assignment to a late tour, but such actions without further factual explication do not arise to the level of adverse employment action. See Bowen-Hooks, 13 F.Supp.3d at 213-4, 217 (multiple undesirable assignments that fall within the scope of plaintiff's employment and discipline

protected class or that there some inference of discriminatory intent. See Moore v. City of New York, No. 15 CV 6600 (GBD)(JLC), 2017 U.S. Dist. LEXIS 379 at 8 63-4 (S.D.N.Y. Jan. 3, 2017).

and/or reprimands are not adverse employment actions). Plaintiff also alleges that her supervisor cursed at her and slammed his hands on his desk and accused her of misconduct. Again, such allegations are not adverse actions. See Barounis v. New York City Police Dep't., No. 10 Civ. 2631 (SAS), 2012 U.S. Dist. LEXIS 176477 at *157 (S.D.N.Y. Dec. 12, 2012) (being yelled at and subject to a misconduct complaint without any subsequent disciplinary action not adverse employment actions.) Notwithstanding the fact that none of these actions are considered adverse employment actions under the law, these actions do not even meet the minimal burden of demonstrating that defendants took the actions they did against plaintiff *because of her gender*. Thus, plaintiff's claim fails even under the liberal CHRL standard. See Bermudez, 783 F.Supp.2d 560 at 585,588. To the contrary, plaintiff repeatedly alleges that defendant Walton was motivated only by his friendship with defendants Catalina and Gibson. See Am. Compl. at ¶¶ 89, 94, 101, and 122. As such, plaintiff's claims of gender discrimination should be dismissed.

### B. The Complaint Fails to Plead an Inference of Discrimination

Plaintiff has also failed to allege a plausible claim that any of the complained-of actions occurred under circumstances giving rise to an inference of gender discrimination. A plaintiff may raise an inference of discrimination by alleging actions or remarks made by her employer that clearly reveal a discriminatory animus, or by showing that similarly situated employees received preferential treatment. See Ruiz v. City of New York, No. 14 CV 5231 (VEC), 2015 U.S. Dist. LEXIS 117947 at * 11 (S.D.N.Y Sept. 2, 2015). Nowhere in the Amended Complaint are there any facts alleged to suggest, much less show, that plaintiff's supervisors were motivated by gender based discriminatory animus. Here, plaintiff only offers her subjective characterization of defendant Walton's behavior but does not correlate it to any adverse employment act or proffer any other direct indicia of gender-based animus. Just as crucially, she

offers no facts that suggest defendant Walton or any other City defendant treated other women in a similarly disparate manner or men in a more favorable manner.  See Moore, 2017 U.S. Dist. Lexis 379 at *47; Moore v. Verizon, No. 13 Civ. 6467 (RJS), 2016 U.S. Dist. LEXIS 16201 at *19-20 (S.D.N.Y. Feb. 5, 2016). Even under the more liberal standard of the CHRL, plaintiff fails to plausibly allege any facts creating an inference that she was discriminated against on the basis of her gender.  See Nguedi v. FRB of N.Y., No. 16 civ. 0636 (GHW), 2017 U.S. Dist. LEXIS 89848 at *20-21 (S.D.N.Y. June 11, 2017).  For the foregoing reasons, plaintiff claims of gender discrimination must be dismissed.

## POINT V

### PLAINTIFF CANNOT ESTABLISH A CLAIM OF HOSTILE WORK ENVIRONMENT_____

In order to plead a hostile work environment claim under § 1983 or the SHRL, plaintiff must plead facts demonstrating that: 1) the complained of conduct was objectively severe or pervasive; 2) that she subjectively believed it to be severe or pervasive; and 3) that the hostile environment was because of plaintiff's protected class.  See Guity v. Uniondale Free Sch. Dist., No. 15 CV 5693 (SJF)(AKT), 2017 U.S. Dist. LEXIS 27542 at *55-56 (E.D.N.Y. Feb. 23, 2017) For her hostile work environment claim, plaintiff appears to rely on the same conduct comprising her gender discrimination claim.   If so, whether viewing the conduct discretely or in aggregate, such conduct fails to establish a plausible claim of a hostile work environment.   First, plaintiff does not allege any conduct that is either frequent or severe enough to suggest an objectively hostile work environment.   Beyond plaintiff's amorphous complaints of unfair assignments and discipline, which notably she attributes as retaliation for her protected speech, the only discrete acts she attributes to defendant Walton is that he once cursed at her; that he once accused her of misconduct; and that he once assigned her to a late tour during a two year period.   Even taken

collectively, these actions are at best episodic and do not remotely evidence an atmosphere permeated with intimidation, ridicule or insult. Notably, plaintiff does not allege that the conduct interfered with her working conditions or that she even subjectively believed the conduct to be hostile. See id. at *58-63 (internal citations omitted). And crucially, plaintiff, once again, fails to allege any facts suggesting that the conduct was related to her gender. Thus, even under the more liberal CHRL rubric, which only requires plaintiff to adduce evidence of "unwanted gender-based conduct," plaintiff fails to set forth a plausible hostile work environment claim. At best, plaintiff complains of "petty, slight, or trivial inconveniences," which are not actionable. See Bermudez, 783 F.Supp.2d at 579; Barounis, 2012 U.S. Dist. LEXIS 176477 at *47-48.

## POINT VI

### PLAINTIFF'S CLAIMS OF RETALIATION FAIL

Retaliation claims under § 1983 and the SHRL require a plaintiff to demonstrate that: 1) she engaged in protected activity; 2) her employer was aware of the protected activity; 3) the employer took an adverse employment action against plaintiff; and 4) there is a causal connection between the protected activity and the adverse employment action. See Vega v Hempstead Union Free Sch., 801 F.3d 72, 90-1 (2d Cir. 2015); Goonewardena v. New York State Workers' Comp. Bd., No. 09 Civ. 8244 (RA)(HBP), 2016 U.S. Dist. LEXIS 16552 at * 55 (S.D.N.Y. Feb. 9, 2016); Bermudez, 783 F.Supp.2d 560 at 576.

Plaintiff's retaliation claims fail for myriad reasons. According to the Amended Complaint, plaintiff's causes of action arise from events that took place between December 2014 and November 2016 and that were taken because of her opposition to gender discrimination. See Am. Compl. at ¶¶ 167-169, 202-207, and 219-224. Plaintiff, however, fails to set forth any facts

indicating that she in fact opposed gender discrimination.  Plaintiff simply claims that she filed a

Notice of Claim on August 11, 2016 alleging unspecified violations of her civil rights[8].

However, as evidenced by Exhibit A to the Dandrige Declaration, there is absolutely no mention

of plaintiff's opposition to gender discrimination.  As such, plaintiff cannot plausibly assert that

she engaged in protected activity.  See Goonewardena, 2016 U.S. Dist. LEXIS 16552 at * 56-7.

Not surprising, then, is plaintiff's omission of any facts suggesting that either defendant Walton

or the City of New York was aware of her opposition to gender discrimination.  Even if it were

presumed that defendant Walton was in receipt of the Notice of Claim, its lack of any mention of

gender-based animus certainly would not put him on notice that plaintiff had engaged in

protected activity.  Finally, plaintiff  cannot establish that the transfers, performance monitoring

and the late tour assignment, which were the only acts that followed her Notice of Claim,

constitute adverse employment actions, much less that they were causally connected to her so-

called protected activity.  See Guity, 2017 U.S. Dist. LEXIS 27542 at *37-8. As such, plaintiff's

retaliation claims should fail.

## POINT VII

## PLAINTIFF'S  MONELL  CLAIMS  SHOULD BE DISMISSED

Plaintiff's § 1983 claims against the City must be dismissed for failure to plead a

plausible claim for municipal liability as plaintiff cannot show that the challenged acts were

performed pursuant to a municipal policy or custom.  See Monell v. Dep't of Soc. Servs., 436

U.S. 658 (1978).  To establish a Monell claim, a plaintiff is required to plead and prove three

elements: 1) an official policy or custom that 2) causes the plaintiff to be subjected to 3) a denial

---

[8] Plaintiff also alleges that she complained to the Daily News on August 15, 2016 and to the IAB sometime in September 2016 but attributes those complaints to be about her reports of official misconduct not gender discrimination.  See Am. Compl. at ¶¶ 105, 116-117.

of a constitutional right.  See Wray v. City of N.Y., 490 F.3d 189, 195 (2d Cir. 2007).  It is well established that a single incident of unconstitutional activity, particularly if it involved only actors below the policy-making level, does not rise to the level of a Monell violation.  See City of Okla. v. Tuttle, 471 U.S. 808, 814 (1985).  Additionally, where a plaintiff fails to establish an underlying violation of her constitutional rights, the Monell claim will necessarily fail.  See Schultz v. Inc. Vill. of Bellport, 479 Fed. Appx. 358, 360 (2d Cir. 2012).

Here, plaintiff's complaint does not allege any facts in support of the existence of a City policy that deprived her First Amendment rights or rights under the Equal Protection Clause of the Fourteenth Amendment.  Instead, plaintiff makes the conclusory allegation that the City "implement[ed] 'official and un-official' policies of gender discrimination, retaliation, and illegal performance goals [that] deprived her of constitutional and statutory rights." See Compl. at ¶¶ 127-8.  Naked assertions that a custom and policy exist without any facts supporting the existence of such a policy or custom will not suffice to survive a motion to dismiss.  See Guity, 2017 U.S. Dist. LEXIS 27542 at *97-8.

Plaintiff's claims surround her own alleged treatment at work, which, standing alone, are insufficient to state a Monell claim for failure to train and supervise under § 1983. Goodine v. Suffolk Cty. Water Auth., No. 14-4514, 2016 U.S. Dist. LEXIS 10776, at *19 (E.D.N.Y. Jan. 29, 2016).  Plaintiff's claims regarding negligent hiring also fail because there are no allegations suggesting that defendant City inadequately screened any of the individually named defendants such it was "highly likely that the [officer] would inflict the particular injury suffered by plaintiff.  See Nassau Cty. Employee "L" v. Cty. of Nassau, 345 F. Supp.2d 293, 298-9 (E.D.N.Y. 2004).  For these reasons, plaintiff's § 1983 claims against defendant City should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the complaint in its entirety and grant

such other and further relief as the Court deems just and proper.

Dated:      New York, New York
           September 12, 2017

                          ZACHARY W. CARTER
                          Corporation Counsel of the
                          City of New York
                          Attorney for Defendants
                          100 Church Street, Room 2-142
                          New York, New York 10007
                          (212) 356-0889
                          ddandrig@law.nyc.gov

                          By:               /s/
                                Danielle M. Dandrige
                                Assistant Corporation Counsel